**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
───────────────────────────────────────

JAVELL FOX,

                                        Plaintiff,

            v.                                                                  9:15-CV-0390
                                                                                (TJM/CFH)

SUPERINTENDENT LEE, et al.,

                                        Defendants.
───────────────────────────────────────

APPEARANCES:                              OF COUNSEL:

JAVELL FOX
12-B-1626
Plaintiff pro se
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN          MARIA E. LISI-MURRAY, ESQ.
New York State Attorney General    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**United States Magistrate Judge**

### MEMORANDUM DECISION AND ORDER

### I.  INTRODUCTION

        Plaintiff pro se Javell Fox commenced this action pursuant to 42 U.S.C. § 1983

("Section 1983") and the Religious Land Use and Institutionalized Persons Act

("RLUIPA"), 42 U.S.C. § 2000cc.  Dkt. No. 1 ("Compl.").  Presently before the Court are

plaintiff's motions for appointment of pro bono counsel and to amend his complaint.  Dkt.

Nos. 54, 55.[1]  Defendants oppose the motion to amend.  Dkt. No. 56.  Plaintiff filed a reply.
Dkt. No. 59.


## II. MOTION TO AMEND[2]

### A. Procedural History

In his original complaint, plaintiff sued twenty-four defendants for misconduct that
allegedly occurred while he was incarcerated at Eastern New York Correctional Facility
("Eastern C.F.").  See generally Compl.  By Decision and Order filed July 17, 2015, Senior
United States District Judge Thomas J. McAvoy liberally construed plaintiff's complaint to
assert the following claims:  (1) First Amendment Free Exercise Clause and RLUIPA claims
against defendants Madison, Miller, Williamson, Cruz, and Vanacore;[3] (2) claims that
defendants Bey and Cruz verbally harassed plaintiff; (3) a claim that defendants Waugh,
Connor, and Williamson conducted an improper cell search; (4) First Amendment retaliation
claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Henry, Lifield,
Bradley, Schadel, Williamson, Cruz, Vanacore, and Barg; (5) an Eighth Amendment
excessive force claim against defendant Cruz; (6) claims that defendants Calao, Jennings
and Labatte interfered with his First Amendment right of access to the courts; (7) Fourteenth
Amendment due process claims against defendants Simmons, Wendland, and Russo;

---

[1] Plaintiff also has a motions for preliminary injunctive relief pending.  Dkt. Nos. 37, 53.  Those motions
will be addressed by separate order.

[2] Any unpublished cases cited within this Memorandum-Decision and Order will be provided to plaintiff
pro se.

[3] In his original complaint, plaintiff requested monetary damages and injunctive relief.  Compl. at 36-40.
Judge McAvoy dismissed all claims for monetary damages pursuant to RLUIPA.  July 2015 Order at 22.

(8) failure-to-investigate claims against defendants Lee, Webbe, and Russo; (9) an Eighth Amendment conditions-of-confinement claim against defendant Cuomo; (10) a claim that defendants Simmons and Sullivan violated DOCCS directives; (11) conspiracy claims against defendants Lee, Madison, Webbe, Russo, and Sullivan; and (12) supervisory claims against defendants Lee and Annucci.  Dkt. No. 10 (the "July 2015 Order").

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), Judge McAvoy determined that the following claims survived sua sponte review and required a response:  (1) the First Amendment Free Exercise Clause and RLUIPA claims against defendants Madison, Miller, Williamson, Cruz, and Vanacore; (2) the First Amendment retaliation claims against defendants Lee, Madison, Kozak, Bey, Simmons, Wendland, Williamson, Cruz, Vanacore, and Barg; (3) the Eighth Amendment excessive force claim against defendant Cruz; (4) the claims that defendants Calao, Jennings and Labatte interfered with plaintiff's First Amendment right of access to the courts; (5) the Fourteenth Amendment due process claims against defendants Simmons, Wendland, and Russo; and (6) the supervisory claims against defendants Lee and Annucci.  July 2015 Order at 22.  Plaintiff's claims for monetary damages under RLUIPA were dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and all remaining claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  Id.  Finally, Waugh, Connor, Webbe, Cuomo, Henry, Lifield, Bradley, Schadel, and Sullivan were dismissed without prejudice as defendants.  Id. at 21-22.  Defendants submitted an answer to the complaint and a Mandatory Pretrial Discovery and Scheduling Order was issued.  Dkt. Nos. 32, 33.

3

**B.  Legal Standard**

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provide that courts "should freely give leave" to amend a complaint "when justice so requires."  FED. R. CIV. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits."  Williams v. Citigroup Inc., 659 F. 3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000); see also Couloute v. Ryncarz, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting Monahan, 214 F.3d at 283).  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008); Monahan, 214 F.3d at 283.  An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Fed. R. Civ. P. Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)); see also Malesko v. Corr. Serv. Corp., 229 F.3d 374, 382-84 (2d Cir. 2000), rev'd on other grounds, 534 U.S. 61 (2001) (holding that a proposed amended complaint seeking to assert claims barred by the statute of limitations is futile and must be denied).  The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion.  Nettis v. Levitt, 241 F.3d 186,

4

192 (2d Cir. 2001).

If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil

Procedure, which allows addition of a party "at any time, on just terms," also applies.  FED. R.

CIV. P. 21.  However, the "showing necessary under Rule 21 is the same as that required

under Rule 15(a)."  Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); Soler v. G

& U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (courts apply "'the same standard of liberality

afforded to motions to amend pleadings under Rule 15.'") (quoting Fair Hous. Dev. Fund

Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).


### C. Summary of the Proposed Amended Complaint

Plaintiff's proposed amended complaint asserts claims arising at Eastern C.F. against

the sixteen defendants who survived sua sponte review of the original complaint, and

requests permission to assert claims against eight of the defendants who were previously

dismissed by the July 2015 Order without prejudice.  See generally Dkt. No. 55-1 ("Prop. Am.

Compl.").[4]  Plaintiff's lengthy proposed amended complaint details various constitutional and

statutory violations.  See id.  At the core of the pleading is plaintiff's claim that he is being

denied the right to freely exercise his religion and he is being punished and retaliated against

for refusing to abandon a hairstyle that is religiously significant to him.  Id.  Plaintiff claims

that his hairstyle, which he describes as "shaved on the sides and dread-locked in a Mohawk

style," is a reflection of his sincerely-held religious beliefs.  Id. at 8.[5]  Plaintiff alleges that his

---

[4]  The proposed amended complaint consists of 111 pages (without exhibits) and 155 causes of action. Id.  The first 96 paragraphs are virtually identical to the original complaint.  Id.

[5]  Page numbers in citations to the proposed amended complaint refer to the page numbers assigned by the Court's electronic filing system (CM/ECF) rather than to the page numbers in the original document.

"hairstyle is a religious symbol that signifies wisdom." Id.[6] In addition to his free exercise

claims, plaintiff alleges, among other things, that (1) his right to freedom of expression has

been violated; (2) he has been retaliated against for filing of grievances and subjected to

harassment, excessive force, and inadequate conditions of confinement; (3) he was denied

access to a telephone and reading materials; (4) he was denied access to the courts; and (5)

his rights to due process and equal protection were violated. See generally Prop. Am.

Compl. For a more complete statement of plaintiff's claims, reference is made to the

proposed amended complaint.

   Construed liberally, plaintiff's proposed amended complaint asserts the following

claims against the following defendants: (1) First Amendment freedom of expression claims

against defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller,

Williamson, Cruz, Sullivan, and Vanacore; (2) First Amendment free exercise claims against

defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller,

Williamson, Cruz, Sullivan, and Vanacore; (3) RLUIPA claims against defendants Madison,

Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan,

and Vanacore; (4) First Amendment retaliation claims against defendants Madison, Bey,

Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Henry, Lifield,

Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel; (5) claims that defendants

Madison, Bey, Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller,

Henry, Lifield, Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel harassed

---

[6] In his reply to defendants' response in opposition to the pending motion to amend, plaintiff states that he "is a part of a[n] Ancient African religion called Anunake. Plaintiff['s] Mohawk style with dreadlocks represent[s] [his] conscious and sub-conscious merging together to form wisdom [and] this is a sincere belief." Dkt. No. 59 at 18.

him; (6) claims that defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Henry, Lifield, Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel discriminated against him and denied him equal protection in violation of the Fourteenth Amendment; (7) Eighth Amendment conditions of confinement claims against defendants Madison, Bey, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Annucci, Henry, Lifield, Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel; (8) Fourth Amendment unreasonable search claims against defendants Waugh, Connor, Williamson, and Cruz; (9) claims that defendants Webbe, Lee, and Simmons denied plaintiff access to reading materials, including religious reading materials; (10) First Amendment access to the courts claims against defendants Calao, Jennings, and Labatte; (11) claims that plaintiff was denied access to a telephone by defendants Henry, Lifield, Bradley, and Schadel; (12) Eighth Amendment excessive force and sexual harassment claims against defendant Cruz; (13) Fourteenth Amendment due process claims against defendants Lee, Webbe, Russo, Simmons, and Wendland; and (14) supervisory claims against defendants Lee and Annucci.  See generally Prop. Am. Compl.

### D. Analysis

#### 1. RLUIPA Claims

In his proposed amended complaint, plaintiff seeks only monetary damages under RLUIPA from defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, and Vanacore.  Prop. Am. Compl. at 48-49 (Fourth and Fifth Causes of Action), 52 (Twelfth Cause of Action), 56 (Twenty-First Cause of Action), 62

(Thirty-Third Cause of Action), 65 (Forty-First Cause of Action), 69 (Fifty-First Cause of Action), 73 (Sixty-First Cause of Action), 77 (Seventieth Cause of Action), 80 (Seventy-Seventh Cause of Action), 93 (One Hundred-Eighth Cause of Action), 96 (One Hundred-Seventeenth Cause of Action), 101 (One Hundred Thirtieth Cause of Action), and 104 (One Hundred Thirty-Eighth Cause of Action).  As Judge McAvoy noted in the July 2015 Order:

> RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. Washington v. Gonyea, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing Sossamon v. Texas, __ U.S. __, 131 S.Ct. 1651, 1663 (2011)); see also Jouvert v. New York, No. 9:10-CV-0930 (MAD/CFH), 2012 WL 6964386, at *5 (N.D.N.Y. Oct. 23, 2012) ("[M]onetary claims against state defendants in their official capacities are unavailable under the RLUIPA because the Act does not unambiguously waive sovereign immunity. . . . Similarly, monetary claims against individual defendants in their individual capacities raise constitutional concerns.  Because the RLUIPA was enacted pursuant to the Spending Clause rather than § 5 of the Fourteenth Amendment, which entrusts Congress with the power to enforce the provisions of the Fourteenth Amendment, Congress lacked constitutional authority to enforce RLUIPA against individual defendants in their individual capacities.") (citations omitted); see also Pilgrim v. Artus, No. 9:07-CV-1001 (GLS/RFT), 2010 WL 3724981, at *15-16 (N.D.N.Y. Mar. 18, 2010) (discussing Eleventh Amendment immunity and RLUIPA decisions in this Circuit).

July 2015 Order at 5-6.  Thus, insofar plaintiff seeks monetary damages against defendants in their official or individual capacities under RLUIPA, he fails to state a claim upon which relief may be granted, and this part of his motion to amend is denied as futile.

## 2.  Harassment

Plaintiff claims that defendants Madison, Bey, Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Henry, Lifield, Bradley, Williamson, Cruz, Sullivan,

Vanacore, Barg, and Schadel harassed him.[7]  However, as plaintiff was previously advised in

Judge McAvoy's Decison and Order:

> [v]erbal harassment and name calling, absent physical injury, are
> not constitutional violations cognizable under 42 U.S.C. § 1983
> ("Section 1983").  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d
> Cir. 1986) (per curiam); Aziz Zarif Shabazz v. Pico, 994 F. Supp.
> 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone,
> unaccompanied by any injury no matter how inappropriate,
> unprofessional, or reprehensible it might seem, does not
> constitute the violation of any federally protected right and
> therefore is not actionable under 42 U.S.C. § 1983") (quotation
> omitted); see also Rivera v. Goord, 119 F. Supp. 2d 327, 342
> (S.D.N.Y. 2000) (collecting cases); Baskerville v. Goord, No.
> 97-CV-6413, 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000)
> ("Mere verbal abuse or the use of . . . slurs or epithets reflecting
> . . . prejudice, although reprehensible, does not form the basis of
> a claim pursuant to § 1983.").  This principle holds true even when
> the harassment concerns a plaintiff's religion. See, e.g., Hamilton
> v. Erhardt, No. 10-CV-6234, 2011 WL 3476475, at *4 (W.D.N.Y.
> Aug. 9, 2011) (holding that verbal taunting does not amount to a
> constitutional violation "even where such verbal harassment
> pertains to the plaintiff's race or religion.").

July 2015 Order at 6-7.  Accordingly, plaintiff's motion to amend is denied as futile to the

extent that the proposed amended complaint asserts claims of verbal harassment.


### 3.  Fourth Amendment Unreasonable Search Claims

Plaintiff alleges that defendant Cruz, with the permission of defendant Connor,

directed defendant Williamson to pat-frisk and strip-frisk plaintiff's person as he was leaving

---

[7]  See Prop. Am. Compl. at 49 (Seventh Cause of Action), 52 (Thirteenth Cause of Action), 54-55 (Seventeenth Cause of Action), 57 (Twenty-Second Cause of Action), 59-60 (Twenty-Seventh Cause of Action), 62 (Thirty-Fourth Cause of Action), 65-66 (Forty-Second Cause of Action), 68 (Forty-Eighth Cause of Action), 74 (Sixty-Third Cause of Action), 77-78 (Seventy-First Cause of Action), 81 (Seventy-Eighth Cause of Action), 86 (Eighty-Ninth Cause of Action), 88-89 (Ninety-Fifth Cause of Action), 90 (One Hundredth Cause of Action), 93-94 (One Hundred-Ninth Cause of Action), 97 (One Hundred Eighteenth Cause of Action), 101 (One Hundred Thirty-First Cause of Action), 104 (One Hundred Thirty-Ninth Cause of Action), 106 (One Hundred Forty-Fourth Cause of Action), and 107 (One Hundred Forty-Ninth Cause of Action).

the mess hall, and that defendant Williamson made plaintiff "remove his religious headgear and shake his hair out for no penological reason. Prop. Am. Compl. at 10-11, 14. Immediately thereafter, plaintiff alleges that defendants Williamson and Waugh searched plaintiff's cell and that the cell search, which was in retaliation for grievances, was authorized by defendant Connor. Id. at 11, 14, 58, 60, 94-95, and 98.

### a. Body Search

Although inmates do not retain the full range of constitutional rights that unincarcerated individuals enjoy, they do retain "some Fourth Amendment rights upon commitment to a correctional facility." Bell v. Wolfish, 441 U.S. 520, 558-60 (1979).  The Second Circuit has reiterated their holding "that maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016) (quoting Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir. 1992)).  "[T]he Fourth Amendment still requires that searches – even those in the prison context – be reasonable."  Hodges v. Stanley, 712 F.2d 34, 35 (2d Cir. 1983).  "The test of reasonableness under the Fourth Amendment . . . requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails."  Bell, 441 U.S. at 559.

Construing the proposed amended complaint liberally, plaintiff alleges that defendant Williamson, by order of defendant Cruz, and with the permission of defendant Connor, subjected him to an unreasonable search by requiring him to remove his religious headgear and shake out his hair, and that the search was without justification and in retaliation for grievances and solely to harass plaintiff.  Prop. Am. Compl. at 10-11.  In light of the Second

Circuit's decision in <u>Harris</u>, 818 F. 3d at 57, plaintiff's motion to amend is granted with respect to his Fourth Amendment unreasonable search claims against defendants Cruz, Williamson, and Connor.

### b.  Cell Search

Plaintiff claims that defendants Williamson and Waugh improperly searched his cell, and that defendant Connor authorized the search.  Prop. Am. Compl. at 11, 58, and 60.  The Supreme Court has ruled that inmates have no constitutional protection from cell searches, and courts within this Circuit have held that there are no such protections even where those searches were conducted for retaliatory reasons.  <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."); <u>see</u>, <u>e.g.</u>, <u>Walker v. Keyser</u>, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983.").  Accordingly, this portion of plaintiff's motion to amend is denied.

### 4.  Denial of Access to a Telephone

It is well settled that a prisoner retains the right under the First Amendment to communicate with family and friends.  <u>See</u> <u>Procunier v. Martinez</u>, 416 U.S. 396, 408-09 (1974); <u>Morgan v. La Vallee</u>, 526 F.2d 221, 225 (2d Cir. 1975).  However, such right is not limitless.  <u>See</u> <u>Jones v. N.C. Prisoners' Labor Union, Inc</u>., 433 U.S. 119, 125-26 (1977); <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Although a prisoner has a constitutional right to communicate with the outside world, this right does not include a guarantee of a specific

11

means of communication; thus, for example, there is no constitutionally-guaranteed right of a prisoner to unrestricted use of a telephone.  See Banks v. Argo, No. 11 Civ. 4222 (LAP), 2012 WL 4471585, at *5-6 (S.D.N.Y. Sept. 25, 2012); Bellamy v. McMickens, 692 F. Supp. 205, 214 (S.D.N.Y. 1988).  A prisoner's access to family and friends via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal.  See Edwards v. Horn, No. 10 Civ. 6194 (RJS/JLC), 2012 WL 473481, at *4 (S.D.N.Y. Feb. 14, 2012) (holding that the denial of free telephone calls is not actionable claim); Henry v. Davis, 10 Civ. 7575 (PAC/JLC), 2011 WL 3295986, at *2 (S.D.N.Y.  Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world."); Pitsley v. Ricks, No. 9:96-CV-0372 (NAM/DRH), 2000 WL 362023, at *5 (N.D.N.Y. Mar. 31, 2000) (noting that phone restrictions have generally been upheld as long as the individual could still communicate with his family via mail).  Therefore, to state a claim under the First Amendment based upon limits on communication with others, including family and friends, a plaintiff must allege that he did not have access to any avenue of communication.  See Riddick v. Arnone, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. July 9, 2012).

Plaintiff alleges that defendants Henry and Lifield denied him the ability to telephone his family on one occasion, and defendant Bradley did the same on another day.  Prop. Am. Compl. at 20, 30.  The phone restrictions at issue do not rise to the level of a First Amendment violation as plaintiff does not contend that he had no means of access of communication, such as use of the phone on other days or communication by mail. Accordingly, plaintiff's motion to amend is denied in this regard.

### 5. Retaliation Claims

The requirements for stating a prima facie First Amendment retaliation claim were set forth in the July 2015 Order and will not be restated here.  See July 2015 Order at 7-8. Plaintiff re-iterates his claims that defendants Henry, Lifield, and Bradley denied him access to a telephone call in retaliation for his grievances, and now asserts that same claim against defendant Schadel.  Prop. Am. Compl. at 20, 30.  As noted in the July 2015 Order, "the loss of one telephone call on two separate occasions months apart, is de minimis and does not amount to adverse action necessary to support a retaliation claim."  July 2015 Order at 9. Accordingly, plaintiff has failed to state retaliation claims against defendants Henry, Lifield, Bradley, or Schadel, and the motion to amend is denied with respect to these claims.

The motion to amend is granted with respect to the First Amendment retaliation claims against defendants Madison, Bey, Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, Vanacore, and Barg, and otherwise denied as to the remainder of the retaliation claims.

### 6. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly-situated people alike.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Bizzaro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (quoting LeClair v. Saunders,

13

627 F.2d 606, 609-10 (2d Cir. 1980)).  To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class."  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  In the alternative, under a "class of one" theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003).

Plaintiff's allegations that defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Henry, Lifield, Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel denied him equal protection or discriminated against him are entirely conclusory, with no facts to support any claim that he was discriminated against or denied equal protection.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  As a result, the motion to amend is denied insofar as plaintiff seeks to add claims that defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Henry, Lifield, Bradley, Williamson, Cruz, Sullivan, Vanacore, Barg, and Schadel discriminated against him or denied him equal protection in violation of the Fourteenth Amendment.

### 7. Eighth Amendment Conditions of Confinement Claims

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. AMEND. VIII.  The Second Circuit, in addressing the needs

protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment.  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001).

"To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and (2) subjectively, the defendant official acted with "a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety."  Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.  Rhodes, 452 U.S. at 347; Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam).  To meet the subjective element, the plaintiff must show that the defendant acted with "more than mere negligence."  Farmer, 511 U.S. at 835.  To constitute deliberate indifference, "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety."  Jabbar v. Fischer, 683 F.3d 54, 57

15

(2d Cir. 2012).  Evidence that a risk was "obvious or otherwise must have been known to a defendant" may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.  Brock v. Wright, 315 F.3d 158, 164 (2d Cir. 2003).

### a.  Defendants Henry and Lee

Plaintiff alleges that for a period of thirty days, he was confined to a cell that had no slot in the door to pass food trays into the cell.  Prop. Am. Compl. at 15-17.  Defendant Lee was aware that the cell had no slot for trays but "refused to get it fixed."  Id. at 16.  Defendant Henry refused to open the cell door to pass plaintiff his food trays, but instead made plaintiff climb up the bars to receive his trays.  Id.  As plaintiff climbed, defendant Henry called him a monkey.  Id.  While climbing, plaintiff fell, sustaining serious injuries.  Id. at 16-17.  Construing these allegations liberally, plaintiff appears to allege that defendants Lee and Henry knew of, but disregarded a risk to plaintiff's safety.

Plaintiff also alleges that he: was confined in a cell in the middle of January under extremely cold conditions; received no additional clothing or blankets to keep warm; was forced to wear the same pants for thirty days; was denied supplies with which to clean his cell and, therefore, was "forced to sleep in a dirty cell, with feces and urine stain on the toilet and mucus in the sink."  Id. at 19.  Construing the proposed amended complaint liberally, plaintiff alleges that his conditions of confinement, taken in combination, amounted to cruel and unusual punishment, and that defendant Henry was "well aware" of these cruel and unusual conditions but failed to take corrective action.  Id. at 20; see also Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (noting that to assert a constitutional claim based upon the conditions of his confinement, an inmate must allege conditions that "either alone or in

16

combination, pose an unreasonable risk of serious damage to his health.*")*.

### b.  Defendants Webbe, Sullivan, and Simmons[8]

Although the time periods plaintiff alleged to have spent in SHU are somewhat unclear, construing the proposed amended complaint liberally, plaintiff appears to allege that, as a result of disciplinary hearings held before defendants Webbe, Sullivan, and Simmons, he was confined in keeplock for a continuous ten-month period ending on July 18, 2015.[9] Prop. Am. Compl. at 39-46.  "The Supreme Court and Second Circuit have clearly established that lengthy durations of SHU confinement can constitute an 'atypical and significant' hardship for purposes of determining an inmate's liberty interest within the context of a due process claim.  Moreover, the Second Circuit has held that

> lengthy segregated confinement of the type considered herein,
> after an inordinate lapse of time, may necessitate periodic review
> to insure that conditions once constitutional have not become
> cruel and unusual[.]

Peoples v. Fischer, 898 F. Supp. 2d 618, 625 (S.D.N.Y. 2012) (footnotes omitted).  "Although the due process analysis is conceptually distinct from that of the Eighth Amendment, a finding of atypicality is, by analogy, indicative of whether a sentence is grossly disproportionate to the underlying offense.  Numerous courts have found that long stretches

---

[8]  Plaintiff's conditions of confinement claim against Webb is the thirty-eight cause of action of the proposed amended complaint.  Prop. Am. Compl at 64.  His conditions of confinement claim against Simmons is his sixty-sixth cause of action.  Id. at 75-76.  His conditions of confinement claim against Sullivan is his 135th cause of action.  Id. at 102-03.

[9]  For example, plaintiff alleges that defendant Sullivan found him guilty of misconduct and sentenced him to thirty days keeplock at a time when plaintiff had already been in keeplock for five months.  Prop. Am. Compl. at 40.  Plaintiff also alleges that defendant Webbe sentenced him to four months of keeplock and told him that he had been assigned to the disciplinary hearing as a retirement gift so he could punish plaintiff harshly.  Id. at 39.  Plaintiff appears to allege that during this ten-month time period, defendant Simmons illegally extended his stay in keeplock.  Id. at 41.

of segregation can constitute cruel and unusual punishment." Id. at 625-26.

In light of the requirement that leave to amend be freely given, see Fed. R. Civ. P. 15(a), plaintiff's motion to amend is granted to the extent that he wishes to assert Eighth Amendment conditions of confinement claims against defendants Lee, Henry, Webbe, Sullivan and Simmons.

### c.  Remaining Defendants

Plaintiff asserts, in conclusory fashion, that defendants Madison, Bey, Waugh, Russo, Wendland, Miller, Lifield, Bradley, Williamson, Cruz, Vanacore, Barg, and Schadel subjected him to cruel and unusual punishment.  However, plaintiff presents no facts to plausibly suggest that any of these defendants deprived him of a basic human need.[10]  See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); see also Rhodes, 452 U.S. at 347 (Routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that criminal offenders pay for their offenses against society." ); Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Accordingly, the motion to amend is denied to the extent that plaintiff requests

---

[10]  Plaintiff does claim that because he was in solitary confinement, he was deprived of social interaction. See Prop. Am. Compl. at 50-51 (Ninth Cause of Action); 53-54 (Fifteenth Cause of Action); 58-59 (Twenty-Sixth Cause of Action); 66-67 (Forty-Fifth Cause of Action); 78-79 (Seventy-Fourth Cause of Action); 82-83 (Eighty-Second Cause of Action); 90 (Ninety-Ninth Cause of Action); 92 (One Hundred-Fifth Cause of Action); 95 (One Hundred-Fourteenth Cause of Action); 99-100 (One Hundred Twenty-Seventh Cause of Action); 105 (One Hundred Forty-Third Cause of Action); 107 (One Hundred Forty-Eighth Cause of Action); and 108-09 (One Hundred Fifty-Third Cause of Action).  The motion to amend has been granted with respect to the Eighth Amendment conditions of confinement claims against the defendants who allegedly sentenced plaintiff to solitary confinement.  See Part II.D.8.a., supra.

permission to assert Eighth Amendment conditions of confinement claims against defendants Madison, Bey, Waugh, Russo, Wendland, Miller, Lifield, Bradley, Williamson, Cruz, Vanacore, Barg, and Schadel.

### 8.  Remaining Claims

Given the liberal standard for reviewing motions to amend, <u>Monahan</u>, 214 F.3d at 283 (noting that leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility"), plaintiff's motion to amend is granted with respect to the following remaining claims:  (1) First Amendment freedom of expression claims against defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, and Vanacore; (2) First Amendment free exercise claims against defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, and Vanacore; (3) First Amendment retaliation claims against defendants Madison, Bey, Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, Vanacore, and Barg; (4) Eighth Amendment conditions of confinement claims against defendants Webbe, Lee, Simmons, Henry, and Sullivan; (5) Fourth Amendment unreasonable search claims against defendants Connor, Williamson, and Cruz; (6) claims that defendants Webbe, Lee, and Simmons denied plaintiff access to reading materials, including religious reading materials; (7) First Amendment access to the courts claims against defendants Calao, Jennings, and Labatte; (8) Eighth Amendment excessive force and sexual harassment claims against defendant Cruz; (9) Fourteenth Amendment due process claims against defendants Lee, Webbe, Russo, Simmons, and Wendland; and

(10) supervisory claims against defendants Lee and Annucci.

### III.  MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff requests appointment of pro bono counsel.  Dkt. No. 54.  Plaintiff previously filed a motion for appointment of counsel.  See Dkt. No. 4.  In the July 2015 Order, Senior District Judge McAvoy denied plaintiff's first motion for appointment of counsel finding, among other things, that

> (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel," Velasquez [v. O'Keefe], 899 F. Supp. [972,] 974 [(N.D.N.Y. 1995)]; (4) if this case survives any dispositive motions filed by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference; and (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

July 2015 Order at 18.  After reviewing plaintiff's renewed motion for appointment of counsel, the Court finds that plaintiff has not demonstrated a change of circumstances which would warrant appointment of counsel at this time.[11]  Accordingly, plaintiff's renewed motion for appointment of counsel (Dkt. No. 54) is denied for the same reasons set forth in the July 2015 Order.

---

[11]  Plaintiff states that a trial date has been set for this action.  Dkt. No. 54 at 2.  This is incorrect.  Plaintiff may be confused, however, because Senior District Judge McAvoy is considering holding a hearing to address plaintiff's pending motions for preliminary injunctive relief.  A this time, no trial date has been set in this action.

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion to amend (Dkt. No. 55) is **GRANTED in part** with respect to the following claims:  (1) First Amendment freedom of expression claims against defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, and Vanacore; (2) First Amendment free exercise claims against defendants Madison, Bey, Waugh, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, and Vanacore; (3) First Amendment retaliation claims against defendants Madison, Bey, Kozak, Waugh, Connor, Webbe, Russo, Lee, Simmons, Wendland, Miller, Williamson, Cruz, Sullivan, Vanacore, and Barg; (4) Eighth Amendment conditions of confinement claims against defendants Webbe, Lee, Simmons, Henry, and Sullivan; (5) Fourth Amendment unreasonable search claims against defendants Connor, Williamson, and Cruz; (6) claims that defendants Webbe, Lee, and Simmons denied plaintiff access to reading materials, including religious reading materials; (7) First Amendment access to the courts claims against defendants Calao, Jennings, and Labatte; (8) Eighth Amendment excessive force and sexual harassment claims against defendant Cruz; (9) Fourteenth Amendment due process claims against defendants Lee, Webbe, Russo, Simmons, and Wendland; and (10) supervisory claims against defendants Lee and Annucci. The motion to amend (Dkt. No. 55) is **DENIED in all other respects**; and it is further

**ORDERED** that the Clerk of the Court is directed to (1) file the proposed amended complaint (Dkt. No. 55-1) as the amended complaint in this action; and (2) revise the docket to add the following individuals as defendants in this action: "Officer Waugh, Eastern NY Correctional Facility"; "Sgt. Connor, Eastern NY Correctional Facility"; "Captain Webbe,

21

Eastern NY Correctional Facility"; "Officer Henry, Eastern NY Correctional Facility"; and "Lt. Sullivan, Eastern NY Correctional Facility."  <u>The amended complaint, **_as modified herein_**, will supersede and replace the previously-filed complaint (Dkt. No. 1) and will be the operative pleading</u>; and it is further

**ORDERED** that the Clerk shall issue summonses for defendants Waugh, Connor, Webbe, Henry, and Sullivan, and forward them, along with copies of the amended complaint, Dkt. No. 55-1, to the United States Marshal for service upon those defendants; and it is further

**ORDERED** that a formal response to plaintiff's amended complaint (Dkt. No. 55-1), as modified herein, be filed by  defendants Waugh, Connor, Webbe, Henry, and Sullivan, or their counsel, as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that **within thirty (30) days** of the filing date of this Decision and Order, defendants Lee, Madison, Bey, Kozak, Russo, Simmons, Wendland, Miller, Calao, Jennings, Labatte, Annucci, Williamson, Cruz, Vanacore, and Barg shall file a response to the amended complaint; and it is further

**ORDERED** that the renewed motion for appointment of counsel (Dkt. No. 54) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated:   December 19, 2016
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

22