**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JAVELL FOX,

                Plaintiff,                No. 9:15-CV-0390
                                                    (TJM/CFH)

       v.

SUPERINTENDENT LEE, et al.,

                Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

Javell Fox
12-B-1626
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff pro se

Hon. Eric T. Schneiderman             MARIA E. LISI-MURRAY, ESQ.
Attorney General for the                Assistant Attorneys General
   State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Presently pending before the Court are plaintiff pro se Javell Fox's ("plaintiff") motions for

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order.

contempt. Dkt. Nos. 117, 129, 130, 131, 138. For the following reasons, it is recommended that plaintiff's motions for contempt be denied. Insofar as plaintiff seeks to amend his complaint to include these new claims, it is ordered that plaintiff's motion is denied.

## I. Background

Plaintiff brings the underlying action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") Lee, DOCCS Commissioner ("Comm.") Anthony Annucci, Correction Deputy Superintendent of Administration ("Deputy Superintendent") Wendland, Correction Deputy Superintendent Security ("DSS") Russo, Deputy Calao, Captain ("Capt.") Webbe, Lieutenant ("Lieut.") Madison, Lieut. Simmons, Lieut. Sullivan, Sergeant ("Sgt.") Bey, Sgt. Connor, Sgt. Vanacore, Sgt. Barg, Corrections Officer ("C.O.") Kozak, C.O. Waugh, C.O. Miller, C.O. Henry, C.O. Williamson, C.O. S. Cruz, Corrections Steward C. Jennings, and Corrections Steward Diane Labatte – who at all relevant times, were employed at Eastern Correctional Facility ("Eastern") – violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments by refusing to allow him to wear his religious hairstyle. Dkt. No. 76 ("Am. Compl."). On May 3, 2017, the Hon. Thomas J. McAvoy entered a Stipulation and Order on plaintiff's Request for Preliminary Injunction and Temporary Restraining Order Relief, allowing plaintiff to maintain his current hairstyle pending the outcome of this litigation. Dkt. No. 96 ("the Order").

On or about May 2017, plaintiff transferred to Attica Correctional Facility ("Attica"). Dkt. No. 117 at 3. Plaintiff contends that "a copy of the Order was served on the Superintendent of Attica [ ] and all of his subordinates were made aware on or before 5/12/2017 . . . ." Id. On

2

August 9, 2017, plaintiff attended a program committee meeting to receive an employment opportunity within the prison. Id. Instead of receiving one of the three jobs he requested, Senior Offender Coordinator ("S.O.R.C.") Blackbourne and Sgt. T. Will offered plaintiff the positions of porter or painter helper. Id. at 5. Plaintiff contends that S.O.R.C. Blackbourne and Sgt. T. Wills denied him his requested positions because of his hairstyle in violation of the Order. Id. at 4-5. Plaintiff alleges that Supt. Noeth committed perjury and is "clearly in contempt" by stating in his declaration that plaintiff was on the waiting list to receive an administrative porter job because "per Directive 4803[,] the only way to receive a prison job is to attend program committee." Dkt. No. 130-1 at 3.

On September 5, 2017, plaintiff was transferred to Great Meadows Correctional Facility ("Great Meadows") for a deposition. Dkt. No. 131-1 at 1-2. Plaintiff gave the intake sergeant a copy of the Order. Id. at 2. On September 6, 2017, C.O. Hope and "John Doe Officer" escorted plaintiff to the deposition. Id. During the escort, C.O. Hope informed plaintiff that he knew of his court order, but that "this [was] a state prison . . . and they make the rules." Id. While at Great Meadows, "the officer working on E-block [ ] on the 7-3 shift" denied plaintiff showers on three occasions and phone calls because of his hairstyle. Id. at 3-4. Ms. Black, the "laundry lady," issued plaintiff a "pancake thin mattress and pillow," and refused to give him a pen and paper. Id. at 6-7.

On September 14, 2017, plaintiff arrived at the intake area to begin his transfer back to Attica. Dkt. No. 131-1 at 4. An unnamed corrections officer performed a strip frisk and "slapped plaintiff on the right buttock." Id. Sgt. Scarlotti and the unnamed officer conducting the strip frisk

3

left the curtain open, exposing plaintiff to other prisoners and officers. Id. Sgt. Scarlotti approached plaintiff and informed him that "he don't [sic] care about no court order fuck the judge this is his house when he say [sic] do something plaintiff better do it." Id. at 5. "John Doe officer" then came in and "threw black spit chewing tobacco spit out of a white styro[f]o[a]m cup" onto plaintiff. Id. In addition, the corrections officer who drove plaintiff to Washington Correctional Facility threw out plaintiff's personal property. Id. at 7.

On September 15, 2017, plaintiff returned to Attica. Dkt. No. 129-1 at 2. Plaintiff's property in his cell was "tossed around . . . from [a] search that occurred on 9/11/17 by Officer Kizandl . . . out of retaliation for plaintiff being able to have his hair style by court order . . . ." Id.

On October 15, 2017, while at Auburn Correctional Facility ("Auburn"), plaintiff gave C.O. Gifford a copy of the Order. Dkt. No. 138 at 1. The next day, C.O. Gifford and "John Doe officer" stopped plaintiff in the main yard. Id. C.O. Gifford directed plaintiff to show "John Doe officer" and "John Doe Sgt." the Order. Id. C.O. Gifford proceeded to harass plaintiff and mispronounce the name of his religion. Id. at 1-2. "John Doe officer" stated that "this is state prison not the federal and that the court has no power in state prison." Id. at 3. C.O. Gifford and "John Doe officer" keeplocked plaintiff because of his hairstyle. Id.

## II. Discussion[2]

Plaintiff attempts to hold in contempt nonparties (1) S.O.R.C. Blackbourne, Sgt. T. Wills,

---

[2] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4

Senior Head Cook, C.O. Kizandl, and Supt. Noeth from Attica, Dkt. Nos. 117, 129, 130; (2) C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti from Great Meadows, Dkt. No. 131; and (3) C.O. Gifford, John Doe officer, and John Doe Sgt. from Auburn, Dkt. No. 138.

### A. Motion for Contempt

### 1. Legal Standard

A party or nonparty "may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" Paramedics Electromedicina Comercial, LTDA v. GE Medical Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004) (quoting King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995)). Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 65(d)(2) directs that only persons "who receive actual notice of it by personal service or otherwise,"[3] are bound by a preliminary injunction or restraining order, including: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2).

> "Actual notice" is defined as knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.

---

[3] The Second Circuit has held that Fed. R. Civ. P. 56(d) "codifies the long settled principle that personal service of an injunction is not required as long as those whom the plaintiff seeks to hold in contempt had actual notice of the decree." Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 129 (2d Cir. 1979).

5

> A notice is regarded in law as "actual notice" where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of having the means of knowing it even though such means may not be employed by him or her.

58 AM. JUR. 2d Notice § 4 (2d ed., 2018).

To hold a nonparty in contempt, the nonparty must "either abet[4] the [party named in the order], or must be legally identified with them." People of State of N.Y. by Vacco v. Operational Rescue Nat., 80 F.3d 64, 70 (2d Cir. 1996) (internal quotation marks and citation omitted). In assessing "legal identity," "the critical inquiry is whether there is a substantial continuity of identity" between the two parties. Id. The Fifth Circuit has held that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order." Waffenschmidt v. MacKay, 763 F.2d 711, 714 (5th Cir. 1985).

### 2. Merits

It is undisputed that the individuals named in plaintiff's Motions for Contempt are not parties to the pending action. Plaintiff seems to suggest that these nonparties are "officers, agents, servants, employees, and attorneys" of defendant Annucci pursuant to Fed. R. Civ. P. 65(d)(2)(B). Dkt. No. 138 at 4. In determining whether injunctive relief may be assessed against

---

[4] "The dictionary defines 'abettor' as a person who abets (incites or encourages) *an offender*. As a legal definition, [a]id and abet is not a needless redundancy, . . . it is a term of art meaning to assist the perpetrator of the crime while sharing the requisite intent. By its plain language, this provision appears to contemplate liability towards a party who in some way helps or compels another to act in a discriminatory manner." Bolick v. Alea Grp. Holdings, Ltd., 278 F. Supp. 2d 278, 282 (D.Conn 2003) (internal quotation marks and citations omitted) (emphasis in original).

6

a nonparty, this Court has held that nonparty corrections officers do not meet the "very limited circumstances" set forth in Fed. R. Civ. P. 65(d)(2)(B). See Chandler v. Graham, No. 9:16-CV-0348 (DNH/ATB), 2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016) (citing FED. R. CIV. P. 65(d)(2)) ("To the extent that Chandler seeks injunctive relief against unidentified correctional officers or other staff at Green Haven C.F. – who are not defendants in the present action – injunctive relief is available against non-parties only under very limited circumstances, none of which are present here."); Ross v. Koenigsmann, No. 9:14-CV-1321 (GTS/DJS), 2016 WL 5107130, at *2 (N.D.N.Y. Sept. 20, 2016) (citing FED. R. CIV. P. 65(d)(2)) (same). Thus, to hold the nonparties in contempt, plaintiff must establish that they received actual notice of the Court's order, and that they "actively aid and abet a party in violating that order." Waffenschmidt, 763 F.2d at 714. Based upon the assessment of each motion below, the undersigned concludes that plaintiff has not established by clear and convincing evidence that the nonparties actively aided and abetted the named defendants in the underlying action.

### a. Dkt. No. 117, 129, 130

Plaintiff contends that (1) S.O.R.C. Blackbourne, Sgt. T. Will, and Senior Head Cook should be held in contempt for "punishing [him] for having a Mohawk hairstyle" and denying his preferred choice for employment, Dkt. No. 117 at 7; (2) C.O. Kizandl searched plaintiff's cell and "tossed" his property around because of plaintiff's hairstyle, Dkt. No. 129 at 2; and (3) Supt. Noeth committed perjury and official misconduct to cover up the violations of his subordinates, Dkt. No. 130-1 at 3-4. Plaintiff claims that the Order "was served on the Superintendent at Attica [ ] and

7

all of his subordinates were made aware on or before 5/12/2017," but plaintiff's broad allegation does not automatically establish actual notice to the nonparties. Dkt. No. 117 at 2-3. Although plaintiff states that S.O.R.C. Blackbourne and Sgt. T. Wills referenced the Order, and, arguably had actual notice of it, there is no indication that Senior Head Cook or C.O. Kizandl knew of or had actual notice of the Order. Even if the undersigned were to assume that the Attica nonparties received actual notice, plaintiff's allegations do not suggest that S.O.R.C. Blackbourne, Sgt. T. Will, Senior Head Cook, or C.O. Kizandl actively aided or abetted defendants in this action. There is no indication that S.O.R.C. Blackbourne, Sgt. T. Wills, Senior Head Cook, or C.O. Kizandl incited or encouraged the named defendants in the underlying action, or helped or compelled them to act in a discriminatory manner. See Bolick, 278 F. Supp. 2d at 282 (defining "aiding and abetting").

Moreover, Attica Supt. Joseph H. Noeth declared that "although plaintiff was, initially, advised that his hairstyle would need to conform to the requirements of grooming set forth in Directive 4914, . . . the need for plaintiff to conform to the grooming standards has been waived." Dkt. No. 122 ("Noeth Decl.") at 5. Supt. Noeth further declared that plaintiff was being considered for the position of Administrative Porter, his first choice. Id. To the extent that plaintiff suggests that Supt. Noeth committed perjury by declaring that DOCCS personnel were reviewing plaintiff's application for his preferred work placement, see Dkt. No. 130, the undersigned has reviewed DOCCS Directive 4803 and finds that defendants' action is consistent with established procedures for changing an inmate's work assignment. See Dkt No. 130-1 at 9 ("Prior to making or changing an inmate's assignment or program . . . ., review all records and recommendations

8

regarding the inmate's specific program needs and consider the skills, aptitude, and custodial history of the inmate in conjunction with specific facility needs.").[5] Thus, Supt. Noeth cannot be said to have committed perjury with his declaration.

Accordingly, because plaintiff has not established that S.O.R.C. Blackbourne, Sgt. T. Will, Senior Head Cook, C.O. Kizandl, and Supt. Noeth aided and abetted defendants to this action, it is recommended that plaintiff's motions for contempt (Dkt. No. 117, 129, 130) be denied.

## Dkt. No. 131

Plaintiff contends that C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti should be held in contempt for subjecting him to abuse because of his hairstyle in violation of the Order. Dkt. No. 131 at 2-7. Affording plaintiff the special solicitude to which a pro se litigant is generally entitled, plaintiff claims that on September 5, 2017, he gave the intake sergeant at Great Meadows a copy of the Order, and the intake sergeant then "let all officers know" that plaintiff could maintain his hairstyle. Id. at 2.[6]

Because nonparties C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti were employed at Great Meadows, located within the jurisdictional territory of this Court, plaintiff may establish contempt by demonstrating the nonparties were "legally identified" with each other or

---

[5] Even if Supt. Noeth had violated Directive 4803, the undersigned notes that failure to follow a DOCCS directive does not amount to a constitutional violation. See Burroughs v. Petrone, 138 F. Supp. 3d 182, 219 (N.D.N.Y. 2015); Sanders v. Gifford, No. 11-CV-0326, 2014 WL 5662775, at *4 (N.D.N.Y. Nov. 4, 2014).

[6] Even affording plaintiff this special solicitude, plaintiff does not establish that Ms. Black, a laundress at the facility, received notice of the Order.

9

that they aided and abetted defendants. See Vacco, 80 F.3d at 70. Assessing whether a nonparty was in active concert or participation with a party, the Seventh Circuit summarized the requisite connection, stating that:

> [T]he "legal identity" justification for binding nonparties is limited to those who have notice of the injunction and are so closely identified in interest with the enjoined party that it is reasonable to conclude that their rights and interests were adjudicated in the original proceeding . . . . [A] former employee of an enjoined corporation had such a key role in the company and in the underlying litigation that he could be "legally identified" with the enjoined corporation and therefore held in contempt for using a newly formed company to circumvent the injunction.

National Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. National Spiritual Assembly of the U.S., Inc., 628 F.3d 837, 841 (7th Cir. 2010).

Here, there is no indication that C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti actively aided and abetted or were legally identified with the defendants in this action. First, plaintiff does not establish that the Great Meadows nonparties incited or encouraged the named defendants in the underlying action, or helped or compelled them to act in a discriminatory manner in order to meet the aiding or abetting option. See Bolick, 278 F. Supp. 2d at 282. Second, the record does not establish that C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti were "so closely identified in interest" with the named defendants in this action that "their rights and interests were adjudicated in the original proceeding" in order to demonstrate legal identity. See Hereditary Guardianship, 628 F.3d at 841. Unlike the nonparty in Hereditary Guardianship, it cannot be said that the Great Meadows nonparties had such a "key role" within DOCCS and the underlying litigation to sustain a holding of contempt. See id. Although plaintiff claims that the

10

John Does made reference to plaintiff's court order and his hairstyle, plaintiff's allegations do not suggest that these statements were made "in concert or participation" with defendants, rather than as independent assessments of plaintiff's hairstyle and based on their own understanding of Directive 4914. Moreover, even assuming plaintiff established the contempt standard as to the Great Meadows nonparties, it is not clear that the nonparties' individual actions — providing plaintiff a "pancake thin mattress," frisking plaintiff, throwing chewing tobacco spit at plaintiff — violated the Order or were in any way related to plaintiff's hair style. Therefore, because plaintiff has not established that C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti actively aided and abetted or were legally identified with defendants to this action, it is recommended that plaintiff's motion for contempt (Dkt. No. 131) be denied.

## Dkt. No. 138

Plaintiff contends that C.O. Gifford, "John Doe Officer," and "John Doe Sgt." ordered him keeplocked because of his hairstyle. Dkt. No. 138 at 3. Plaintiff claims that he showed C.O. Gifford and "John Doe Officer" the Order, and, therefore, provided them with actual notice. Id. at 2-3.[7] Because nonparties C.O. Gifford, "John Doe Officer," and "John Doe Sgt." were employed at Auburn, located within the jurisdictional territory of this Court, plaintiff may establish contempt by demonstrating the nonparties were "legally identified" with each other. See Vacco, 80 F.3d at 70. However, plaintiff's allegations do not establish that these nonparties actively aided and abetted or were legally identified with named defendants in the underlying action. See Vacco,

---

[7] Plaintiff does not allege that he, or the other Auburn nonparties, provided "John Doe Sgt." with actual notice of the Order.

11

80 F.3d at 70; Bolick, 278 F. Supp. 2d at 282. Plaintiff does not establish that the Great Meadows nonparties incited or encouraged the named defendants in the underlying action, or helped or compelled them to act in a discriminatory manner. See Bolick, 278 F. Supp. 2d at 282. Moreover, like the Great Meadows nonparties, plaintiff fails to demonstrate that C.O. Gifford, "John Doe Officer," and "John Doe Sgt." were "so closely identified in interest" with the defendants in the present action or played a key role in the litigation to sustain a finding of contempt. See Hereditary Guardianship, 628 F.3d at 841. Therefore, because plaintiff has not established that C.O. Gifford, "John Doe Officer," and "John Doe Sgt." actively aided and abetted or were legally identified with defendants to this action, it is recommended that plaintiff's motion for contempt (Dkt. No. 138) be denied.

### B. Motion to Amend

Providing a liberal reading to plaintiff's submissions, it is arguable that plaintiff is attempting to request leave to amend his amended complaint. Plaintiff claims that (1) S.O.R.C. Blackbourne, Sgt. T. Wills, and Senior Head Cook violated the First and Fourteenth Amendment by infringing on his rights to free speech, freedom of expression, free exercise of religion, and equal protection of the law, Dkt. No. 117 at 7; (2) C.O. Kizandl harassed and retaliated against him in violation of the First Amendment, and illegally searched his cell in violation of the Fourth Amendment, Dkt. No. 129-1 at 1-2; (3) C.O. Hope, John Does 1-6, Ms. Black, and Sgt. Scarlotti violated the First, Eighth, and Fourteenth Amendments by subjecting him to excessive force, sexual harassment, and verbal harassment, and infringing on his rights to

12

freedom of expression and equal protection of the law, Dkt. No. 131-1 at 8; and (4) C.O. Gifford, "John Doe Officer," and "John Doe Sgt." violated the First and Fourteenth Amendments by infringing on his rights of free exercise of religion, freedom of expression, and equal protection of the law, as well plaintiff's rights under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), Dkt. No. 138 at 5. Insofar as plaintiff's Motions for Contempt may be interpreted as motions for leave to amend the current complaint, this motion cannot stand.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), leave to amend a pleading shall be freely given when justice so requires. See Livingston v. Piskor, 215 F.R.D. 84, 85 (W.D.N.Y. 2003). "Absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed." Monahan v. New York City Dep't of Corrs., 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

> In determining what constitutes "prejudice", [the Court is to] consider whether assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted). If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 553 (W.D.N.Y. 2013) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). The determination of whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss pursuant to Fed. R. Civ. P.

13

12(b)(6). Id. To avoid dismissal, the proposed amendment must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989).

First, it is clear that defendants would be prejudiced by such amendment. The addition of new claims and parties – some of whom are outside of the jurisdiction of the Northern District of New York – would require defendants to conduct additional discovery and expend additional time and resources to address the claims of the newly-added parties. See Block, 988 F.2d at 350; Rodriguez v. Walton, No. 1:07-CV-58, 2008 WL 747003, at *1 (D. Vt. Mar. 18, 2008) (denying the plaintiff's motion to amend the complaint to add the Commissioner of the Vermont Department of Corrections to the action when the plaintiff's claims took place at a private facility in Tennessee and all the named defendant worked at that facility). Further, permitting such amendment would significantly delay resolution of the nearly three-year-old action. See id.

Second, plaintiff's allegations in his motions for contempt, to the extent that they can be interpreted as proposed amendments to the complaint, do not "'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Plaintiff's claims that the John Doe officers from Great Meadows denied him showers does not amount to a constitutional violation. See Dolberry v. Levine, 567 F. Supp. 2d 413, 417 (finding that denial

14

of showers for several weeks does not amount to an Eighth Amendment violation). Plaintiff's allegations that Ms. Black gave him a "pancake thin" mattress because of his hair also fail to constitute an Eighth Amendment violation. See Little v. City of N.Y., No. 16 Civ. 0780 (PAE) (JCF), 2017 WL 713895, at *5 (S.D.N.Y. Feb. 3, 2017) ("[T]he allegations in the complaint are insufficiently detailed to demonstrate that the allegedly inadequate mattress caused sleep deprivation serious enough to rise to the level of a constitutional violation."). As to plaintiff's allegations that S.O.R.C. Blackbourne, Sgt. T. Wills, and Senior Head Cook denied him his top three choices of jobs due to his hair, plaintiff "has no constitutional right to any specific prison job and has no recognized expectation in keeping a particular prison job." Holmes v. Artuz, No. 95 CIV. 2309 (SS), 1995 WL 634995, at *1 (S.D.N.Y. Oct. 27, 1995). Moreover, although plaintiff did not receive his top three job choices, he was not denied any job, as he was given a job as a painter. Dkt. No.117 at 5. Insofar as plaintiff suggests that any of the nonparties subjected him to verbal harassment by calling him names and threatening him, verbal harassment, absent injury, is generally insufficient to rise to the level of a constitutional violation. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").

Moreover, plaintiff's contentions that C.O. Kizandl's cell search violated his Fourth Amendment rights fails to state a cognizable claim. This cell search, even if it was due to plaintiff's hair, does not amount to a constitutional violation. See Leitzsey v. Coombe, 998 F.

15

Supp. 282, 289 (W.D.N.Y. 1998) ("The Supreme Court has held that searches of prison cells do not implicate protected constitutional rights; prisoners have no reasonable expectation of privacy within the confines of their cell.") (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)); DeMaio v. Mann, 877 F. Supp. 89, 95 (N.D.N.Y. 1995) ("Searches of prison cells, even arbitrary searches, implicate no protected constitutional rights."); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) (concluding that an inmate has "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches.").

Next, plaintiff's argument that John Doe and Sgt. Scarlotti subjected him to excessive force in violation of the Eighth Amendment when they slapped plaintiff in the face and threw chewing tobacco spit at him fails to establish that John Doe and Sgt. Scarlotti's conduct amounted to more than a de minimis use of force. Such use of force is not subject to Eighth Amendment protection. Hudson v. McMillian, 503 U.S. 1, 9-19 (1992); see Phelan v. Thomas, No. 9:10-CV-11 (GLS/DJS), 2017 WL 519246, at *4 (N.D.N.Y. Feb. 8, 2017) ("The conduct alleged here — two or three open-handed slaps that caused no lasting injury — falls short of the objective component of an Eighth Amendment excessive force claim."); cf. Hogan v. Fischer, 738 F.3d 509, 515-16 (2d Cir. 2013) ("We are unwilling to accept, as a matter of law, the proposition that spraying an inmate with a mixture of feces, vinegar, and machine oil [that burned the plaintiff's eyes and left him with other physical injuries] constitutes a de minimis use of force."). Moreover, plaintiff has not established that he engaged in constitutionally-protected conduct, or that his protected conduct was a "substantial or motivating factor" in defendants' adverse action. Id. at 239-40.

Finally, addressing plaintiff's argument that C.O. Gifford and "John Doe Officer" ordered

16

him keeplocked because of his hairstyle in violation of the Fourteenth Amendment, it is noted that "a prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Velez v. Burge, 483 F. App'x 626, 628 (2d Cir. 2012) (summary order) (internal quotation marks omitted) (quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986)). Plaintiff's conclusory allegations that the Auburn nonparties keeplocked him in retaliation for his hairstyle are insufficient to state a claim for relief under section 1983 as plaintiff has not established that he was keeplocked in retaliation for that conduct. See Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

Therefore, because plaintiff's allegations do not state "sufficient factual matter. . . to 'state a claim to relief that is plausible on its face,'" and defendants would undoubtedly be prejudiced by the new claims, it is recommended that plaintiff's motion to amend his complaint be denied. Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that plaintiff's motions for contempt (Dkt. Nos. 117, 129, 130, 131, 138) be **DENIED**; and it is

**ORDERED**, that insofar as plaintiff's motions may be read as a motion for leave to to amend his complaint (Dkt. Nos. 117, 129, 130, 131, 138)), such motion be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

17

Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[8]

Dated: February 5, 2018
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[8] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

18