**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAVELL FOX,

                    Plaintiff,                No. 9:15-CV-0390
                                                          (TJM/CFH)

        v.

SUPERINTENDENT LEE, et al.,

                    Defendants.
_____

**APPEARANCES:**                          **OF COUNSEL:**

Javell Fox
12-B-1626
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582
Plaintiff pro se

Hon. Eric T. Schneiderman               MARIA E. LISI-MURRAY, ESQ.
Attorney General for the                  ADRIENNE J. KERWIN, ESQ.
   State of New York                     Assistant Attorneys General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiff pro se Javell Fox ("plaintiff") commenced this civil rights action in April 2015.

Dkt. No. 1 ("Compl."). In April 2016, plaintiff moved to amend his complaint, and the

undersigned granted that motion. Dkt. Nos. 55, 75. Presently pending before the Court

is plaintiff's motion for leave to file a second amended complaint.   Dkt. No. 142.[1]
Defendants opposed the motion to amend.   Dkt. No. 143.   Plaintiff filed a reply.   Dkt. No.
148.

## I. Background

Plaintiff brings the underlying action pursuant to 42 U.S.C. § 1983, alleging that
defendants Superintendent ("Supt.") Lee, DOCCS Commissioner ("Comm.") Anthony
Annucci, Correction Deputy Superintendent of Administration ("Deputy Superintendent")
Wendland, Correction Deputy Superintendent Security ("DSS") Russo, Deputy Calao,
Captain ("Capt.") Webbe, Lieutenant ("Lieut.") Madison, Lieut. Simmons, Lieut. Sullivan,
Sergeant ("Sgt.") Bey, Sgt. Connor, Sgt. Vanacore, Sgt. Barg, Corrections Officer ("C.O.")
Kozak, C.O. Waugh, C.O. Miller, C.O. Henry, C.O. Williamson, C.O. S. Cruz, Corrections
Steward C. Jennings, and Corrections Steward Diane Labatte – who at all relevant times,
were employed at Eastern Correctional Facility ("Eastern") – violated his constitutional
rights under the First, Fourth, Eighth, and Fourteenth Amendments by refusing to allow him
to wear his religious hairstyle.   Dkt. No. 76 ("Am. Compl.").   On May 3, 2017, the Hon.
Thomas J. McAvoy entered a Stipulation and Order on plaintiff's Request for Preliminary
Injunction and Temporary Restraining Order Relief, allowing plaintiff to maintain his current
hairstyle pending the outcome of this litigation.   Dkt. No. 96 ("the Order").   On July 13,
2017, plaintiff moved for summary judgment.   Dkt. No. 111.   Defendants opposed, and

---

[1] Defendants' letter motion requesting leave to make a motion for summary judgment on the
merits, Dkt. No. 147,  will be addressed by separate order.

cross moved to dismiss plaintiff's claims based on failure to state a cause of action.  Dkt. No. 118.  On January 18, 2018, plaintiff moved for leave to amend his First Amended Complaint.  See Dkt. No.142.  On February 5, 2018, the undersigned issued a Report-Recommendation and Order recommending denial of plaintiff's Motion for Summary Judgment and defendants' Motion to Dismiss.  Dkt. No. 144.  On March 6, 2018, Senior District Court Judge Thomas  J. McAvoy adopted the Report-Recommendation and Order, and "remanded the case to the Magistrate Judge to set deadlines for any renewed motion to dismiss based on exhaustion."  Dkt. No. 157.

Plaintiff's proposed Second Amended Complaint asserts new claims against twenty new parties and two existing defendants arising out of incidents that allegedly occurred at Eastern, Great Meadows Correctional Facility ("Great Meadows"), Five Points Correctional Facility ("Five Points"), and Attica Correctional Facility ("Attica").  See generally Dkt. No. 142-2 ("Prop. Sec. Am. Compl.").

## A. Eastern Claims

On July 19, 2015, after plaintiff's release from keeplock confinement, Sgt. Bey stopped plaintiff and informed him that "he need [sic] to drop his lawsuit."  Prop. Sec. Am. Compl. ¶ 149.  Later that night, Sgt. Bey directed three unnamed corrections officers to stop plaintiff.  Id. ¶ 150.  Sgt. Bey instructed plaintiff to remove his shoes and his religious headgear.  Id. ¶ 151.  Plaintiff complied, and Sgt. Bey "r[a]n his hands through [plaintiff's] hair."  Id.  Sgt. Bey stated that if plaintiff did not "drop his lawsuit," he would make it hard on [him]."  Id.  Sgt. Bey threatened plaintiff despite knowing that plaintiff "had a decision

3

from the Inmate Grievance Supervisor that agreed that plaintiff [did] not have to cut his hair." Id.

On July 22, 2015, C.O. Topple and C.O. Krantz approached plaintiff brought plaintiff into the "officer's shack." Prop. Sec. Am. Compl. ¶¶ 153, 154, 155. C.O. Krantz ordered plaintiff to empty his pockets, and plaintiff complied. Id. ¶ 156. C.O. Krantz pat frisked plaintiff, stating, "do [you] know what happens to prisoners who file grievances and lawsuits?" Id. ¶ 157. C.O. Krantz threatened to "break plaintiff in half." Id. ¶ 158. C.O. Krantz "sexually frisk[ed] plaintiff on the thighs, buttocks, and chest before pulling plaintiff's pants down and sticking his finger in plaintiff's butthole." Id. ¶ 159. C.O. Krantz instructed plaintiff to return outside. Id. ¶ 160. Once outside, an unnamed corrections officer escorted plaintiff to the hospital. Id. ¶ 161. The hospital officer told plaintiff that "he must of pissed someone off because they set him up with marijuana." Id. ¶ 163. The hospital officer told plaintiff that "he need [sic] to keep his mouth shut and just take it and he'll have no more problems." Id.

On July 23, 2015, C.O. Krantz issued plaintiff a misbehavior report for drug possession. Prop. Sec. Am. Compl. ¶ 164. On July 27, 2015, "Industrial Superintendent" Barnard commenced a disciplinary hearing[2] regarding the drug possession charge. Id. ¶ 166. Plaintiff informed Sgt. Barnard that C.O. Krantz "sexually violated" him and "set [him] up" with marijuana. Id. Supt. Barnard adjourned the hearing to contact the Inspector General's Office regarding plaintiff's sexual complaint. Id. On July 28, 2015, Sgt. Barg

---

[2] Plaintiff does not indicate the tier of the hearing.

escorted plaintiff to protective custody, and stated that he and C.O. Krantz "set plaintiff up with marijuana because of plaintiff's lawsuit and that plaintiff [was] going to protective custody" prior to his disciplinary hearing so he could not have access to his legal papers. Id. ¶¶ 167, 168, 169. Sgt. Barnard reconvened the disciplinary hearing, and refused to adjourn it even though plaintiff did not have his legal papers. Id. ¶¶ 170, 171. Supt. Barnard told plaintiff that this would be his only opportunity to call witnesses. Id. ¶ 172. Supt. Barnard ultimately adjourned the hearing due to witness unavailability, and plaintiff was released from protective custody. Id. ¶ 175. On August 12, 2015, Sgt. Barnard reconvened plaintiff's disciplinary hearing, and called as a witness Sgt. Barg, who "had no involvement in testing the alleged marijuana," instead of the corrections officer who tested the marijuana. Id. ¶ 176. Supt. Barnard entered into evidence a "black and white photo of what looked like a piece of pot," which violated DOCCS policy against the presentation of "evidence that can't be distinguished through black and white photo." Id. ¶¶ 182, 183. Supt. Barnard found plaintiff guilty of drug possession and sentenced him to thirty days in keeplock and loss of phone, packages, and commissary. Id. ¶ 183, 184. Sgt. Barnard informed plaintiff off-the-record that "he [knew] that plaintiff [was] innocent but he [had] to do what he [had] to do." Id. ¶ 184. On September 10, 2015, plaintiff was released from keeplock. Id. ¶ 186. On October 13, 2015, plaintiff was transferred to Great Meadows. Id. ¶ 187.


**B. Great Meadows Claims**

On October 13, 2015, while in the lobby at Great Meadows, Sgt. Hahn told plaintiff

5

that "he knew all about plaintiff's hair issues at Eastern C.F. and that plaintiff will cut his hair or go to Special Housing Unit confinement with a [beating]." Prop. Sec. Am. Compl. ¶ 188. Plaintiff informed Sgt. Hahn "that he had a grievance decision that agreed with the Constitution . . . that plaintiff [had] a right to have his religious hairstyle." Id. ¶ 189. The next day, Sgt. Hahn instructed unnamed corrections officers to confiscate plaintiff's legal paperwork. Id. ¶ 190. On or about October 21, 2015, Sgt. Hahn issued plaintiff a Tier III misbehavior report for failure to obey a direct order (106.11), false statements, and forgery. Id. ¶¶ 191, 192. Sgt. Hahn claimed that plaintiff falsified a court order from Senior District Court Judge Lawrence E. Kahn pertaining to plaintiff's hairstyle. Id. ¶ 192. On October 29, 2015, an unnamed hearing officer commenced an untimely Tier III disciplinary hearing, and dismissed the charges. Id. ¶¶ 196, 197.

On November 2, 2015, an unnamed Great Meadows staff member locked plaintiff in the shower while his "cell was tossed around[;] paperwork, clothing and hygiene products were all over the cell like a tornado hit it." Prop. Sec. Am. Compl. ¶ 198. An unnamed Great Meadows staff member told plaintiff that "if he wrote any grievances he'll be killed." Id. On November 5, 2015, Sgt. Hahn instructed C.O. Rovelli to search plaintiff's cell "out of retaliation for plaintiff's civil suits, grievances, and hairstyle." Id. ¶ 199. On or about November 8, 2015, hearing officer Ms. K. convened a second Tier III disciplinary relating to plaintiff's October 21, 2015 misbehavior report. Id. ¶ 200. Plaintiff informed Ms. K that the failure to obey a direct order, false statement, and forgery charges had been dismissed, and that he had not been served with a second misbehavior report for those charges. Id. ¶ 202. The unnamed officer who was supposed to serve plaintiff with a new

misbehavior report stated off-the-record that he did not serve plaintiff because the charges had been dismissed.  Id. ¶ 205.  Plaintiff proffered his grievance decision which stated that his hair was in compliance with DOCCS Directives.  Id. ¶ 206.  Ms. K. found plaintiff guilty of all charges, and sentenced plaintiff to 180 days SHU confinement and loss of privileges. Id.  On that same day, unnamed corrections officers forced plaintiff to carry his property down seventy-five steps while handcuffed, injuring his back.  Id. ¶¶ 240, 241.  As plaintiff awaited medical care. C.O. Brady "rub[bed] his fist in plaintiff's face," kicked him in the stomach, grabbed his testicles, and stated that he was "tired of plaintiff and plaintiff will eventually cut his hair because any prison he go [sic] to he'll be abused."  Id. ¶ 243.  C.O. Brady "hammer punched" plaintiff's face and held his finger in plaintiff's eye.  Id. ¶ 244.

On November 18, 2015, plaintiff was transferred to SHU without his property.  Prop. Sec. Am. Compl. ¶ 207.  He did not receive his property for two days.  Id. ¶ 208.  On November 20, 2015, C.O. Effert[3] confiscated plaintiff's copy of the Uniform Commercial Code and issued plaintiff an misbehavior report.  Id. ¶ 209.  Plaintiff never received a disciplinary hearing for the misbehavior report, and C.O. Effert did not return plaintiff's copy of the Uniform Commercial Code.  Id. ¶ 210.  On February 6, 2016, plaintiff was released from SHU and transferred to Five Points.  Id. ¶ 212.

### C. Five Points Claims

Upon his arrival at Five Points, an unnamed corrections officer told plaintiff that "he should cut his hair because they know all about plaintiff and other officers are gonna

---

[3] Plaintiff spells this party's name as both "Effert" and "Iffert."

keeplock [him]." Prop. Sec. Am. Compl. ¶ 213. On February 8, 2016, Sgt. Fuller stopped plaintiff outside of the dining hall and ordered plaintiff to cut his hair. Id. ¶ 219. Plaintiff refused. Id. Sgt. Fuller issued plaintiff an unspecified misbehavior report for failing to obey a direct order. Id. ¶ 220. On February 9, 2016, C.O. Hernandez instructed plaintiff to cut his hair. Id. ¶ 214. Plaintiff refused, and informed the officers of the "grievance decision that allow[ed] him to keep his hair in accordance with the Constitution." Id. C.O. Hernandez and other unnamed corrections officers keeplocked plaintiff. Id. On February 11, 2016, Lieut. Giannino commenced a disciplinary hearing[4] for plaintiff's failure to cut his hair. Id. ¶ 215. Plaintiff informed Lieut. Giannino that he had a grievance decision that allowed him to keep his hairstyle, but Lieut. Giannino stated that because "plaintiff was found guilty at prior facilit[ies], he ha[d] to do the same." Id. ¶¶ 216, 217. Lieut. Giannino found plaintiff guilty, and sentenced him to ten days keeplock confinement. Id. ¶ 218. The next day, Lieut. Giannino commenced a second disciplinary hearing regarding plaintiff's February 8, 2016 misbehavior report. Id. ¶ 221. Lieut. Giannino found plaintiff guilty and sentenced him to twelve days in keeplock confinement. Id.

On March 4, 2016, Sgt. Haff instructed plaintiff to cut his hair. Prop. Sec. Am. Compl. ¶ 222. Plaintiff refused, and Sgt. Haff issued plaintiff a misbehavior report, charging him with untidy person (118.30), failure to obey a direct order (106.11), and obstruction of an employee.[5] Id. On an unspecified date, Lieut. Yang commenced a

---

[4] Plaintiff does not indicate the tier of the hearing.

[5] Sgt. Hahn contended that because he had to stop plaintiff about his hairstyle, he failed to supervise inmates during the lunch; thus, plaintiff interfered with his job. Prop. Sec. Am. Compl. ¶ 223.

disciplinary hearing, and found plaintiff guilty of untidy person and direct order, and not guilty of obstruction. Id. ¶ 225. Lieut. Yang sentenced plaintiff to thirty days keeplock confinement. Id. On March 28, 2016, Sgt. Haff told plaintiff that "he is gonna get plaintiff out of his jail and into the big box." Id. ¶ 226. That same day, Sgt. Haff issued plaintiff a misbehavior report after he attempted to have another inmate attack plaintiff. Id. ¶ 227. On April 5, 2016, hearing officer Frier found plaintiff guilty of refusing to cut his hair, and sentenced him to 180 days SHU confinement. Id. ¶¶ 228, 229. On or about June 5, 2016, plaintiff was transferred to Attica. Id. ¶ 230.

### D. Attica Claims

On June 21, 2016, Sgt. Will ordered plaintiff to cut his hair, and stated that "he was gonna make sure that [plaintiff] uph[e]ld the orders given to [him] at Eastern C.F. and Comstock to cut his hair." Prop. Sec. Am. Compl. ¶ 230. Plaintiff refused, and Sgt. Will issued plaintiff a misbehavior report. Id. ¶ 231. On June 23, 2016, Lieut. Borowski sentenced plaintiff to a thirty day loss of all privileges. Id. ¶ 232. On August 14, 2016, C.O. Malark referred to plaintiff as "a cat in the hat" due to his hairstyle. Id. ¶ 233.

On January 2, 2017, C.O. Fliss searched plaintiff's cell "just to harass [him] for his hairstyle." Prop. Sec. Am. Compl. ¶ 234. During the search, C.O. Fliss "threw plaintiff['s] legal work, hygiene and clothing around [his] cell as if a tornado hit." Id. On January 9, 2017, C.O. Fliss searched plaintiff's cell again. Id.

## E. Other Parties

Plaintiff contends that SHU Director Venettozzi "affirmed and modified all of plaintiff's appeals after plaintiff made [him] aware that he had a constitutional right to his hairstyle and a grievance decision concurring." Prop. Sec. Am. Compl. ¶ 235. Plaintiff contends that DOCCS failed to supervise defendants and newly-proposed defendants. Id. ¶ 237. Plaintiff further alleges that the State of New York failed to train defendants and newly-proposed defendants to follow the Constitution, which resulted in plaintiff's injuries. Id. ¶ 238.

## II. Discussion[6]

Plaintiff seeks to add seventy-eight causes of action against twenty new parties and two existing defendants. See generally Prop. Sec. Am. Compl. Plaintiff claims that (1) Sgt. Bey, C.O. Krantz, Sgt. Barg, C.O. Rovelli, C.O. Effert, Sgt. Fuller, Sgt. Haff, C.O. Malark, and C.O. Fliss verbally harassed him in violation of the Eighth Amendment; (2) Sgt. Bey, C.O. Krantz, Sgt. Barg, Sgt. Hahn, Lieut. Giannino, Sgt. Haff, Mr. Frier, Lieut. Borowski, C.O. Malark, Mr. Brown, and Sgt. Will subjected him to cruel and unusual punishment; (3) Sgt. Bey and C.O. Krantz subjected him to an illegal search and/or strip frisk in violation of the Fourth Amendment; (4) Sgt. Bey, Sgt. Hahn, C.O. Rovelli, C.O. Hernandez, Sgt. Fuller, Sgt. Haff, Sgt. Will, violated the First Amendment by infringing on his right to free speech, freedom of expression and free exercise of religion; (5) C.O. Krantz sexually

---

[6] Any unpublished cases cited within this Memorandum-Decision and Order will be provided to plaintiff pro se.

harassed him in violation of the Eighth Amendment; (6) Sgt. Barg, C.O. Rovelli, Sgt. Fuller, and Sgt. Haff retaliated against him in violation of the First Amendment; (7) Sgt. Hahn, C.O. Rovelli, C.O. Hernandez, Lieut. Giannino, Sgt. Fuller, Sgt. Haff, Mr. Frier, Sgt. Will, Lieut. Borowski, DOCCS, and the State of New York violated the First Amendment by infringing on his right to equal protection of the laws; (8) Sgt. Barnard, Ms. K., Mr. Frier, Lieut. Borowski, Mr. Brown, and Director Venettozzi violated the Fourteenth Amendment by infringing on his due process rights; (9) Sgt. Bey, Sgt. Hahn, C.O. Rovelli, C.O. Hernandez, Lieut. Giannino, Sgt. Fuller, Sgt. Haff, Mr. Frier, Sgt. Will, Lieut. Borowski, C.O. Malark, and Director Venettozzi discriminated against him in violation of the Fourteenth Amendment; (10) Sgt. Hahn, C.O. Hernandez, Sgt. Fuller, Sgt. Haff, and Sgt. Will violated his rights under the Religious Land Use and Institutionalized Person Act ("RLUIPA"); (11) C.O. Brady subjected him to excessive force in violation of the Eighth Amendment; (12) DOCCS failed to supervise defendants and newly-alleged parties and failed to protect him; and (13) the State of New York failed to supervise and train defendants and newly-alleged parties. See id. Defendants argue that plaintiff's motion is futile, citing plaintiff's inordinate delay in filing the motion, and the prejudice to defendants. Dkt. No. 143 at 1-2.

## A. Legal Standard

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provide that courts "should freely give leave" to amend a complaint "when justice so requires." FED. R. CIV. P. 15(a)(2). "The court plainly has discretion [ ] to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the

amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).

> In determining what constitutes "prejudice", [the Court is to] consider whether assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted). If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 553 (W.D.N.Y. 2013) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). The determination of whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See id. To avoid dismissal, the proposed amendment must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989). The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion. See Nettis v. Levitt, 241 F.3d 186, 192 (2d Cir. 2001).

If an amendment seeks to add a party, Rule 21 of the Federal Rules of Civil

12

Procedure, which allows addition of a party "at any time, on just terms," also applies.  FED. R. CIV. P. 21.   However, the "showing necessary under Rule 21 is the same as that required under Rule 15(a)."  <u>Johnson v. Bryson</u>, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); <u>Soler v. G & U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (noting that courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'") (quoting <u>Fair Hous. Dev. Fund Corp. v. Burke</u>, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

## B. Analysis

### 1. RLUIPA Claims

Plaintiff seeks only monetary damages under RLUIPA from Sgt. Hahn, Prop. Sec. Am. Compl. at 144 (171st Cause of Action); C.O. Hernandez, <u>id.</u> at 149 (185th Cause of Action); Sgt. Fuller, <u>id.</u> at 151 (194th Cause of Action); Sgt. Haff, <u>id.</u> at 154 (202nd Cause of Action; and Sgt. Will, <u>id.</u> at 158 (214th Cause of Action).   As this Court has previously stated:

> RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities.  <u>Washington v. Gonyea</u>, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam) (citing <u>Sossamon v. Texas</u>, __ U.S. __, 131 S.Ct. 1651, 1663 (2011)); <u>see also</u> <u>Jouvert v. New York</u>, No. 9:10-CV-0930 (MAD/CFH), 2012 WL 6964386, at *5 (N.D.N.Y. Oct. 23, 2012) ("[M]onetary claims against state defendants in their official capacities are unavailable under the RLUIPA because the Act does not unambiguously waive sovereign immunity. . . .  Similarly, monetary claims against individual defendants in their individual capacities raise constitutional concerns.   Because the RLUIPA was enacted pursuant to the Spending Clause rather than § 5 of the Fourteenth Amendment, which entrusts Congress with the power to enforce the provisions of the Fourteenth Amendment,

> Congress lacked constitutional authority to enforce RLUIPA
> against individual defendants in their individual capacities.")
> (citations omitted); see also Pilgrim v. Artus, No. 9:07-CV-1001
> (GLS/RFT), 2010 WL 3724883, at *15-16 (N.D.N.Y. Mar. 18,
> 2010) (discussing Eleventh Amendment immunity and RLUIPA
> decisions in this Circuit).

Dkt. No. 75 ("December 2016 MDO") at 8 (citing Dkt. No. 10 ("July 2015 Order") at 5-6).

Therefore, to the extent that plaintiff seeks monetary damages against Sgt. Hahn, C.O.

Hernandez, Sgt. Fuller, Sgt. Haff, and Sgt. Will in their official or individual capacities under

RLUIPA, he fails to state a claim upon which relief may be granted, and this part of his

motion to amend is denied as futile. See Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp.,

550 U.S. at 570).

## 2. Claims Against the State of New York and DOCCS

Plaintiff seeks to add as defendants the State of New York and DOCCS. See Prop.

Sec. Am. Compl. at 164-65. Such amendments, however, are futile, as plaintiff's claims

against the State of New York and DOCCS, a state agency, are barred by the Eleventh

Amendment. See Shekkhem'El-Bey v. New York, 464 F. Supp. 2d 329, 333 (S.D.N.Y.

2006) (concluding that the Eleventh Amendment bars claims against the State of New York

"as Congress has not abrogated state sovereign immunity, nor has New York waived its

Eleventh Amendment immunity to suits in federal court.") (internal citations omitted);

Rother v. NYS Dep't of Corr. and Comm. Supervision, 970 F. Supp. 2d 78, 89-90 (N.D.N.Y.

2013) ("DOCCS and it [sic] facilities are state agencies for purposes of the Eleventh

Amendment . . . Because Congress has not abrogated, and New York has not waived,

sovereign immunity with respect to Plaintiff's non-Title VII claims, those claims . . . are

dismissed for lack of subject-matter jurisdiction.") (internal citations omitted).  Accordingly, plaintiff's motion to amend on this ground is denied as such claims are barred by the Eleventh Amendment.

### 3. Sgt. Bey and Sgt. Barg

Plaintiff alleges that defendant Sgt. Bey (1) harassed him and subjected him to cruel and unusual punishment in violation of the Eighth Amendment; (2) illegally searched him in violation of the Fourth Amendment; (3) infringed on his right to freedom of speech in violation of the First Amendment; (4) and discriminated against him for his hairstyle.  See Prop. Sec. Am. Compl. at 139-40.  Plaintiff further contends that defendant Sgt. Barg (1) harassed him and subjected him to cruel and unusual punishment in violation of the Eighth Amendment; and (2) retaliated against him in violation of the First Amendment.  See id. at 142-43.  Plaintiff's allegations do not "'state a claim to relief that is plausible on its face.'"  Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  To the extent that plaintiff contends that Sgt. Bey and Sgt. Barg verbally harassed him, "[i]t is well established in the Second Circuit that verbal harassment of inmates by prison officials, unaccompanied by any injury — no matter how inappropriate, unprofessional, or reprehensible it might seem — does not rise to the level of a violation of the Eighth Amendment."  Cusamano v. Sobek, 604 F. Supp. 2d 416, 490 (N.D.N.Y. 2009).  Further, "threats, unaccompanied by any injury, [do not] amount to such a violation."  Id.  Even leniently construing plaintiff's proposed second amended complaint, the Court cannot conclude that Sgt. Bey and Sgt. Barg's verbal harassment and/or threats, absent physical injury, implicate the Eighth

15

Amendment, and, therefore, they are futile.

Plaintiff's claims that Sgt. Bey and Sgt. Barg subjected him to cruel and unusual punishment are similarly futile. "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Objectively, the deprivation must be "sufficiently serious [such] that [the inmate] was denied the minimal civilized measure of life's necessities[.]" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). To satisfy the subjective prong of the test, the inmate must show that "the defendant official acted with a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted); see also Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002). Plaintiff's proposed second amended complaint is void of any indication how Sgt. Bey or Sgt. Barg subjected him to cruel and unusual punishment. See generally Prop. Sec. Am. Compl. Thus, as plaintiff fails to provide facts as to how defendants violated his Eighth Amendment rights, such amendments would be futile, and plaintiff's motion on this ground is denied. See Blond v. Bradt, No. 12-CV-01082F, 2015 WL 1472152, at *5 (W.D.N.Y. Mar. 31, 2015) (concluding that because the plaintiff's Proposed Amended Complaint failed to explain the alleged conspiratorial acts the plaintiff asserted against the defendants, "[the plaintiff's conspiracy] claim [ ] is futile and the Motion

16

to Amend should be denied insofar as [p]laintiff seeks to assert such claim.").

Plaintiff's allegation that Sgt. Bey illegally searched and strip frisked him in violation of the Fourth Amendment must also be denied.  The Fourth Amendment establishes that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures[ ] shall not be violated."  U.S. CONST. amend. IV.  Generally, inmates are not afforded the same privacy rights as non-inmates because "[l]oss of . . . privacy [is an] inherent incident[ ] of confinement."  Bell v. Wolfish, 441 U.S. 520, 536 (1979).  "In the context of body searches, or strip frisks, such privacy infringements have been upheld as constitutional, even if conducted without probable cause, as long as the search is reasonable and not abusive."  Perez v. N.Y.S. Dep't of Corr. Servs., No. 9:08-CV-1031 (LEK/RFT), 2010 WL 1235637, at *5 (N.D.N.Y. Mar. 17, 2010) (citing Bell, 441 U.S. at 558-60).  First, plaintiff characterizes Sgt. Bey's conduct as a "illegal search - strip frisk," but does not allege that he removed, or that Sgt. Bey instructed him to remove his clothes.  See Prop. Sec. Am. Compl. ¶¶ 150-52.  Thus, it does not appear that plaintiff underwent a strip search.  Regardless, a corrections officer's request that an inmate remove his religious headgear and a search of an inmate's hair does not constitute a Fourth Amendment violation where there is a valid reason for this request.  See Rodriguez v. Mercado, No. 00 CIV. 8588 JSRFM, 2002 WL 1997885, at *1, 6 (S.D.N.Y. Aug. 28, 2002) (acknowledging that a corrections officer's request to remove his religious headgear for a search "was reasonable under the circumstances and cannot give rise to a Fourth Amendment violation.").  Plaintiff does not contend that the search was abusive, nor does he detail the manner in which Sgt. Bey conducted the search other than noting Sgt. Bey

17

requested that plaintiff remove his shoes and his religious headgear and stating that Sgt. Bey ran his hands through plaintiff's hair.  Prop. Sec. Am. Compl. ¶ 151.  Thus, as plaintiff has not stated a prima facie Fourth Amendment violation, such amendment would be futile, and plaintiff's motion on this ground is denied.

To the extent that plaintiff suggests that Sgt. Bey violated his First Amendment right to freedom of speech[7] because he "knew that plaintiff [ ] had a decision from Inmate Grievance Supervisor that agreed that plaintiff [did] not have to cut his hair," plaintiff does not allege that Sgt. Bey "impinge[d] upon [his] ability to speak freely or to associate with others."  See Escalara v. Charwand, No. 9:04-CV-0983 (FJS/DEP), 2008 WL 699273, at *6 (N.D.N.Y. Mar. 12, 2008) ("The right of officials to control inmate speech and other behavior through the imposition of measures reasonably calculated to preserve the safety and security of a prison facility, its employees and inmates, is well established, even though such measures may impinge upon an inmate's ability to speak freely or to associate with others.").  Thus, because plaintiff does not "'state a claim to relief that is plausible on its face,'" his amendment is futile, and his motion on this ground is denied.  Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  Insofar as plaintiff alleges Sgt. Bey "discriminated against" him,[8] such amendment must also be denied as plaintiff fails to indicate that he was "'treated differently than others similarly situated as a result of intentional or purposeful discrimination.'"  Harnage v. Dzurenda, 176 F. Supp. 3d 40, 46

---

[7] Plaintiff alleged that Sgt. Bey violated his First Amendment rights free exercise and freedom of expression in his amended complaint.  See Dkt. No.76 at 44, 49.  Moreover, the undersigned addressed these claims in his February 2018 Report-Recommendation and Order.  See Dkt. No. 144 at 27-32.

[8] Plaintiff does not contend that Sgt. Bey violated his Fourteenth Amendment right to equal protection.

(D. Conn. 2016) (quoting Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005)).

As to plaintiff's claim that Sgt. Barg retaliated against him in violation of the First Amendment by "planting" marijuana on him, this proposed amendment must be denied. See Prop. Sec. Am. Compl. ¶¶ 163, 164.  Courts are to "approach  [First Amendment] retaliation claims by prisoners 'with skepticism and particular care[.]'"  See, e.g., Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema, N. A., 534 U.S. 506 (2002)).  A retaliation claim under Section 1983 may not be conclusory and  must have some basis in specific facts that are not inherently implausible on their face.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); S. Cherry St., LLC v. Hennessee Grp. LLC, 573 F.3d 98, 110 (2d Cir. 2009).  "To prove a First Amendment retaliation claim under Section 1983, a prisoner  must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (quoting Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004), overruled on other grounds by Swierkiewicz, 534 U.S. at 560)).  In order to prove an adverse action, a plaintiff must show that the defendant's "'retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . .  Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection.'"  Roseboro v. Gillespie, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting Dawes, 239  F.3d at 292-93).  If the plaintiff meets this burden, the defendants must show, by a preponderance of the evidence, that they would

have taken the adverse action against the plaintiff "even in the absence of the protected conduct." Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). "Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good discipline, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives." Barclay v. N.Y., 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).

As this Court has previously concluded, it is unclear whether plaintiff suggests that his Mohawk hairstyle – which he alleges wore as an expression of his religion – was the "substantial or motivating factor" for Sgt. Bey's alleged adverse action, and, furthermore, plaintiff has not established that he has a sincerely-held religious belief as there is no evidence in his proposed amended complaint, other than plaintiff's conclusory allegations, as to the sincerity of his religious beliefs. See Dkt. No. 144 at 29-30, 35-36. Therefore, plaintiff fails to allege that his he engaged in constitutionally-protected conduct, or that his protected conduct was a "substantial or motivating factor" in defendants' adverse action, and his motion on this ground must be denied. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) ("In order to prevail on his retaliation claims, [the plaintiff] bears the burden of showing . . . that the [constitutionally protected] conduct was a substantial or motivating factor for the adverse actions taken by prison officials.").

Accordingly, because plaintiff fails to state a claim upon which relief can be granted, his motion to add new claims against the two existing defendants must be denied.

### 4. Remaining Parties

Plaintiff's motion to add causes of action against twenty new parties must also be denied.  Defendants argue that plaintiff's motion should be denied because of (1) the inordinate delay between the filing of plaintiff's amended complaint on December 19, 2016 and the filing of this motion on January 18, 2018; and (2) prejudice to defendants.  See Dkt. No. 143 at 1-2.  The Court agrees, finding that plaintiff has failed  to  explain the inordinate delay in filing the motion to amend, and that defendants would be prejudiced by such amendments.  Plaintiff contends he filed the pending motion after he attempted to file a supplemental complaint regarding the same issues, and the Court advised him to file a motion to amend his complaint.  Dkt. No. 148 at 1.  On June 14, 2017, plaintiff requested permission to supplement his complaint.  Dkt. No. 105.  On June 16, 2017, the Court granted plaintiff permission to file a Motion to Amend and set a briefing schedule.  Text Minute Entry dated June 16, 2017.  On June 29, 2017, plaintiff filed a letter motion advising the Court that he would not be submitting a second amended complaint.  Dkt. No. 109. Instead, on July 7, 2017, plaintiff moved for summary judgment.  Dkt. No. 111.  Although the Court did grant plaintiff permission to file a second amended complaint in June 2017, plaintiff fails to explain why he failed to submit a second amended complaint in June 2017, or why he failed to include the claims that occurred prior to April 2016 in his  amended complaint as some of the alleged claims in the proposed second amended complaint had occurred by that time.  Plaintiff's contention that he only had access to the law library every two weeks does not explain why he waited three months after  the  close of discovery, thirteen months after adoption of his amended complaint, and nearly three years after first

21

commencing this action to file his proposed second amended complant.

Moreover, it is clear that defendants would be prejudiced by these amendments. As this Court stated in its February 5, 2018 Order, the addition of new claims and parties — some of which are outside of the jurisdiction of the Northern District of New York — would require the Court to reopen discovery, and defendants to expend additional time and resources addressing the claims of the newly-added parties. Dkt. No. 145 at 14; see Block, 988 F.2d at 350; Rodriguez v. Walton, No. 1:07-CV-58, 2008 WL 747003, at *1 (D. Vt. Mar. 18, 2008) (denying the plaintiff's motion to amend the complaint to add the Commissioner of the Vermont Department of Corrections to the action when the plaintiff's claims took place at a private facility in Tennessee and all the named defendants worked at that facility); see also Phelan v. Cambell, No. 9:10-CV-540 (NAM/RFT), 2012 WL 407161, at *3 (N.D.N.Y. Jan. 19, 2012) ("Allowing leave to amend the complaint may be especially prejudicial when it is filed post-discovery.") (citing Ansam Assocs., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985)); cf. Kelly v. Tan, No. 11-CV-06614CJS, 2013 WL 4811913, at *3 (W.D.N.Y. Sept. 10, 2013) (finding no inordinate delay where, although the defendants moved for summary judgment, the case was still "in its earliest stage," and the parties had not conducted discovery).

Additionally, a majority of plaintiff's allegations do not "'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Plaintiff's claims that C.O. Krantz, C.O. Rovelli, C.O. Effert, Sgt. Fuller, Sgt. Haff, C.O. Malark, and C.O. Fliss verbally harassed him by calling him names and threatening him cannot stand as verbal harassment, absent injury, is generally insufficient to rise to the

level of a constitutional violation.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed."); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").  Insofar as plaintiff contends that C.O. Krantz, Sgt. Hahn, Lieut. Giannino, Sgt. Haff, Mr. Frier, Sgt. Will, Lieut. Borowski, C.O. Malark, and Mr. Brown subjected him to cruel and unusual punishment, plaintiff has failed to adequately allege a sufficiently serious deprivation or that the parties acted with a "sufficiently culpable state of mind" to satisfy the objective and subjective prong of the Eighth Amendment test because, as noted, plaintiff fails to indicate how the newly-proposed defendants violated his Eighth Amendment rights.  Walker, 717 F.3d at 125.

Plaintiff's allegations that Industrial Supt. Barnard, Ms. K., Lieut. Giannino, Mr. Frier, Lieut. Borowski, C.O. Brown, and SHU Director Venettozzi violated the Fourteenth Amendment by infringing on his due process rights must also fail.  To set forth a prima facie due process claim, "a plaintiff must establish  (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F. Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege *both* that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

23

First, plaintiff fails to indicate how Mr. Brown infringed on his due process rights. See generally Prop. Sec. Am. Compl.  Second, plaintiff alleges that hearing officers Supt. Barnard, Lieut. Giannino, and Lieut. Borowski sentenced him to segregated confinement and/or loss of privileges for periods of thirty days, ten and twelve days, and thirty days, respectively.  See Prop. Sec. Am. Compl. ¶ 183, 184, 218, 221, 232.  These brief periods of segregated confinement do not amount to a due process violation as segregated confinement of fewer than 101 days "'generally do[es] not constitute atypical conditions of confinement.'" Vogelfang v. Capra, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012) (quoting Bunting v. Nagy, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006)).  Indeed, plaintiff fails to plead facts establishing that these periods of keeplock confinement were "uniquely harsh." Vogelfang, 889 F. Supp. 2d at 511 ("[F]urthermore, because [the plaintiff] does not plead any other facts tending to show that her SHU confinement was uniquely harsh, a defect in the disciplinary proceeding before defendant [ ] cannot be the basis for a due process claim.").  Therefore, because plaintiff does not indicate how the conditions of confinement were different than those in the general population, any defect in his disciplinary hearings cannot be the foundation of his due process claim. See id.  Third, although Ms. K and Mr. Frier sentenced plaintiff to 180 days in segregated confinement, plaintiff does not plead other facts demonstrating that the conditions of his segregated confinement were atypical compared to those of the general prison population; thus any "defects" at his disciplinary hearing, alone, do not constitute a due process violation.  See Montalvo v. Lamy, 139 F. Supp. 3d 597, 608 (W.D.N.Y. 2015) ("SHU sentences between 101 and 305 days 'require a district court to articulate specific findings of the conditions of the imposed confinement

24

relative to ordinary prison conditions before determining whether such confinement is atypical . . . . Such a determination is anything but simple, and cannot be resolved summarily.'") (quoting Reynoso v. Selsky, 292 F. App'x 120, 123 (2d Cir. 2008) (summary order)); see Vogelfang, 889 F. Supp. 2d at 511 ("Absent additional particularized allegations regarding the harshness of the confinement — which plaintiff does not adduce — [sixty days keeplock confinement], under the case law, is insufficient to rise to the level of a due process violation. Thus, [the plaintiff's] due process claims based on these two disciplinary proceedings must be dismissed."). Finally, although SHU Director Venettozzi affirmed the underlying decisions of the abovementioned hearing officers, plaintiff's claims against him must be denied for the same reason — plaintiff's failure to allege atypical conditions of confinement. See Figueras v. Venettozzi, No. 9:15-CV-0909 (GLS/DEP), 2017 WL 564815, at *6 (N.D.N.Y. Jan. 20, 2017) ("All of these conditions, as described by plaintiff, did not 'present a dramatic departure from the basic conditions of [plaintiff's] . . . sentence.'") (quoting Sandin v. Conner, 515 U.S. 472, 485 (1995)).

As to plaintiff's allegations that Sgt. Hahn, C.O. Rovelli, C.O. Hernandez, Sgt. Fuller, Sgt. Haff, Mr. Frier, Sgt. Will, Lieut. Borowski, and SHU Director Vennetozzi denied him equal protection or discriminated against him, plaintiff's claims are wholly conclusory, and he fails to offer any facts in support of his contentions. See Ashcroft, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Accordingly, plaintiff's motion for leave to amend his complaint to add these parties is denied.

25

**a. Remaining Claims**

Although the Court acknowledges the liberal standard in reviewing motions to amend, see Monahan v. New York City Dept. of Corr., 214 F.3d 275, 283 (2d Cir. 2000) ("Thus, absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate must be obeyed."), plaintiff's motion to amend is denied with respect to his remaining claims:

(1) First Amendment freedom of speech, expression, and religion claims against Sgt. Hahn, C.O. Rovelli, C.O. Hernandez, Fuller, Sgt. Haff, Sgt. Will; (2) First Amendment retaliation claims against C.O. Rovelli, Sgt. Fuller, and Sgt. Haff; (3) Eighth Amendment sexual harassment and strip search claims against C.O. Krantz; (4) Eighth Amendment excessive force claims against C.O. Brady; and (5) Fourth Amendment illegal search and/or strip frisk claims against C.O. Krantz. It is clear that defendants would be unduly prejudiced by the addition of new claims and parties after the close of discovery and motion practice. See Simpson v. Town of Warwick Police Dep't, 159 F. Supp. 3d 419, 432-33 (S.D.N.Y. 2016) ("[I]t would be 'unduly prejudicial to [defendants] for the Court to allow the addition of [a] new defendant[ ] after submission of a fully briefed motion for summary judgment' . . . . Doing so would necessarily force defendants to reopen discovery so that [the new party] could seek discovery and prepare his defense") (quoting Reynolds v. United States, No. 06 Civ. 00843 (KMW) (DCF), 2007 WL 3071179, at *2 (S.D.N.Y. Oct. 19, 2007)); Phelan, 2012 WL 407161, at *3 (N.D.N.Y. Jan. 19, 2012) ("Allowing leave to amend the complaint may be especially prejudicial when it is filed post-discovery.").

Accordingly, plaintiff's motion for leave to amend his complaint is denied.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for leave to amend his amended complaint (Dkt. No. 142) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: March 21, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

27