**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JAVELL FOX,

                             Plaintiff,                  No. 9:15-CV-0390
                                                  (TJM/CFH)

      v.

SUPERINTENDENT LEE, et al.,

                             Defendants.

_____


**APPEARANCES:**                            **OF COUNSEL:**

Javell Fox
12-B-1626
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff pro se

Attorney General for the                    LYNN M. KNAPP BLAKE, ESQ.
   State of New York                       Assistant Attorneys General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff pro se Javell Fox ("plaintiff"), an inmate who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent ("Supt.") Lee, DOCCS Commissioner ("Comm.") Anthony Annucci, Correction Deputy Superintendent of Administration ("Deputy Superintendent") Wendland, Correction Deputy Superintendent Security ("DSS") Russo, Deputy Calao, Captain ("Capt.") Webbe, Lieutenant ("Lt.") Madison, Lt. Simmons, Lt. Sullivan, Sergeant ("Sgt.") Bey, Sgt. Connor, Sgt. Vanacore, Sgt. Barg, Corrections Officer ("C.O.") Kozak, C.O. Waugh, C.O. Miller, C.O. Henry, C.O. Williamson, C.O. S. Cruz, Corrections Steward C. Jennings, and Corrections Steward Diane Labatte – who at all relevant times, were employed at Eastern Correctional Facility ("Eastern") – violated his constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Dkt. No. 76 ("Am. Compl.").  Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") seeking dismissal of this action on the grounds that plaintiff has failed to exhaust his administrative remedies.  Dkt. No. 174.[2] Plaintiff opposed defendants' motion, and defendants filed a reply.  Dkt. Nos. 184, 189. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

## A. Factual Background

In support of this Motion for Summary Judgment, defendants filed a Statement of

---

[2] Plaintiff's Motion for Contempt, Dkt. No. 200, will be addressed in a subsequent decision.

2

Material Facts.[3]  Plaintiff was housed at Eastern from September 2014 until October 2015.

Dkt. No. 174-2 ¶ 3.  While incarcerated at Eastern, plaintiff filed five grievances with the

Eastern Inmate Grievance Program ("IGP").  Id. ¶ 5.  On December 10, 2014, plaintiff filed

grievance ECF-26147-14, alleging that Eastern staff had harassed and retaliated against

him because of his religious hairstyle.  Id. ¶¶ 6, 7.  Grievance ECF-26147-14 "does not

address many of the issues raised in this litigation."  Id. ¶ 8.  Grievance ECF-26147-14 was

forwarded to the Superintendent for review; on December 24, 2014, the Superintendent

denied plaintiff's grievance.  Id. ¶ 9.   On December 29, 2014, plaintiff appealed the

Superintendent's determination to the Central Office Review Committee ("CORC").  Id. ¶

10.   Plaintiff did not contact Eastern's IGP in writing pursuant to 7 N.Y.C.R.R. §

701.5(d)(3)(i) to determine whether his appeal had been filed and transmitted to CORC.

Id. ¶ 11.  On April 29, 2015, CORC denied plaintiff's appeal.  Id. ¶ 12.  In his appeal packet

---

[3]  Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material
> Facts.  The Statement of Material Facts shall set forth, in numbered
> paragraphs, each material fact about which the moving party contends
> there exists no genuine issue. Each fact listed shall set forth a specific
> citation to the record where the fact is established. The record for
> purposes of the Statement of Material Facts includes the pleadings,
> depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material
> Facts. The non-movant's response shall mirror the movant's Statement
> of Material Facts by admitting and/or denying each of the movant's
> assertions in matching numbered paragraphs. Each denial shall set forth
> a specific citation to the record where the factual issue arises. The
> non-movant's response may also set forth any additional material facts
> that the non-movant contends are in dispute. Any facts set forth in the
> Statement of Material Facts shall be deemed admitted unless specifically
> controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

to CORC concerning grievance ECF-26147-14, plaintiff raised issues that he did not raise in his original grievance filed with the Inmate Grievance Review Committee ("IGRC").  Id. ¶ 13.  In Fox v. Labatte – a prior case filed by plaintiff addressing many of the same issues – this Court found that  "[p]laintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time, as he did with grievance number ECF-26147-14."  Id. ¶ 14 (citing Dkt. No. 174-5 at 8).

On February 23, 2015, plaintiff filed grievance ECF-26217-15, dated February 12, 2015, alleging that Eastern staff had retaliated against him and harassed him for writing grievances; that he had been sexually touched during frisks; and that an officer had read his legal mail.  Dkt. No. 174-2 ¶¶ 16, 17.  On April 21, 2015, the Superintendent denied plaintiff's grievance.  Id. ¶ 18.  On April 24, 2015, plaintiff appealed the Superintendent's determination to CORC; on July 8, 2015, CORC rendered a decision.  Id. ¶¶ 19, 20.  Of the five grievances plaintiff filed while incarcerated at Eastern, he appealed only grievances ECF-26147-14 and ECF-26217-15 to CORC.  Id. ¶ 22.  At his deposition, plaintiff testified that some of his grievances had been handled at the facility level, and "if you get your remedy at the facility level it's no need to appeal it and it's no need to go any further."  Id. ¶ 23 (quoting Dkt. No. 174-4 [Pl. Dep.] at 30).  Plaintiff filed the original complaint in this action on April 2, 2015.  Id. ¶ 15 (citing Dkt. No. 1).


**2. Procedural History**

Plaintiff commenced this action on April 2, 2015.  Dkt. No. 1.  On December 19, 2016, plaintiff filed an amended complaint, which became the operative pleading.  Dkt.

Nos. 75, 76 ("Am. Compl."). Defendants filed an answer, and raised failure to exhaust administrative remedies as an affirmative defense. Dkt. Nos. 32, 82, 83. On July 17, 2017, plaintiff filed a motion for summary judgment. Dkt. No. 111. On August 18, 2017, defendants cross-moved to dismiss pursuant to Fed. R. Civ. P. 12(c). Dkt. No. 118. On February 2, 2018, the undersigned recommended that plaintiff's motion be denied. Dkt. No. 144. The undersigned further recommended that defendants' cross-motion be denied without prejudice, and with opportunity to renew by way of a motion for summary judgment limited to the issue of exhaustion. See id. On March 6, 2018, Senior District Court Judge Thomas J. McAvoy adopted the undersigned's Report-Recommendation and Order. Dkt. No. 157. In accordance with the Court's ruling, defendants now move for summary judgment on the grounds that he has failed to exhaust his administrative remedies.

## II. Discussion[4]

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. See id. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions

> themselves do not "suggest," . . . that we should not "excuse
> frivolous or vexatious filings by pro se litigants," . . . and that
> pro se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).

## B. Procedural Issues

As a threshold matter, the undersigned will address plaintiff's argument that

defendants' Motion for Summary Judgment must be denied, as the November 2017 motion

deadline has expired.  Dkt. No. 184-1 ("Pl. Opp.") at 4-5.  On June 19, 2017, the Court

issued a text order resetting the case deadlines in the underlying action pursuant to

plaintiff's request to file a motion to amend his amended complaint.  See Dkt. No. 106; Text

Min. Entry dated June 16, 2017.  The dispositive motions deadline was set for November

14, 2017.  Dkt. No. 106.  On June 29, 2017, plaintiff advised the Court that he would not

be submitting a motion to amend his amended complaint.  Dkt. No. 109.  Instead, on July

17, 2017, plaintiff filed a motion for summary judgment.  Dkt. No. 111.  Defendants

opposed plaintiff's motion, and cross-moved to dismiss pursuant to Fed. R. Civ. P. 12(c).

Dkt. No. 118.

On February 5, 2018, the undersigned recommended that plaintiff's motion be

denied, and defendants' cross-motion be denied without prejudice and with opportunity to

renew by way of a combined motion to dismiss and motion for summary judgment limited

to the issue of exhaustion.  Dkt. No. 144.  On March 6, 2017, Judge McAvoy accepted the

undersigned's recommendations and remanded the case to set deadlines.  Dkt. No. 157.

On March 21, 2018, the undersigned established the new motion deadline.  Dkt. No. 161.

That same day, defendants requested an extension of the motion deadline, and, on March

23, 2018, the undersigned granted defendants' request and ordered that "defendants file

their motion no later than May 21, 2018."  Dkt. Nos. 162, 163.

On May 21, 2018, defendants filed a motion for summary judgment based on

plaintiff's failure to exhaust his administrative remedies.  Dkt. No. 174.  Thus, the

undersigned concludes that defendants' motion is timely and was filed prior to the

applicable motion deadline.


### C. Exhaustion

Defendants argue that the underlying action must be dismissed as a matter of law

because plaintiff failed to exhaust his administrative remedies.  Dkt. No. 174-16 ("Def.

Mem. of Law") at 4-7.  Plaintiff contends that he exhausted his administrative remedies,

and that "DOCCS grievance employees contradict[ed] [ ] grievance policies by intentionally

failing to file and forward plaintiff's grievances in an attempt to prevent plaintiff from filing

a success [sic] suit and cause the mishaps that[ ] [are] occuring now in reference to

whether plaintiff exhausted his administrative remedies[.]"  Pl. Opp. at 5-6.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any

administrative remedies available to him or her before bringing an action for claims arising

out of his or her incarceration.  See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also

Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all

8

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter</u>, 534 U.S. at 532. Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. <u>Id.</u> at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." <u>Ruggiero v. Cty. of Orange</u>, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." <u>Ross v. Blake</u>, __ U.S. __,136 S. Ct. 1850, 1862 (2016). Thus, the "special circumstances" exception in <u>Hemphill v. New York</u>, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA. <u>Williams v. Priatno</u>, 829 F.3d 118, 123 (2d Cir. 2016).[5]

Although <u>Ross</u> eliminates the "special circumstances" exception, courts must still consider the PLRA's "textual exception to mandatory exhaustion." <u>Ross</u>, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. <u>Id.</u> The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative

---

[5] In <u>Williams v. Priatno</u>, the Second Circuit debated <u>Ross</u>'s effect on <u>Hemphill</u>'s estoppel exception. <u>See</u> <u>Williams</u>, 829 F.3d at 123. The <u>Williams</u> Court stated that "<u>Ross</u> largely supplants our <u>Hemphill</u> inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." <u>Id.</u> (citing <u>Ross</u>, 136 S. Ct. at 1858-59).

procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?[6]

Defendants do not dispute that plaintiff filed five grievances while housed at Eastern. Dkt. No. 174-2 ¶ 5; Dkt. No. 174-13 ("Black Decl.") ¶ 6.  However, defendants argue that plaintiff failed to exhaust his administrative remedies prior to commencing this action.  See Def. Mem. of Law at 4-7.  Defendants proffer the declarations of Assistant Director of the DOCCS IGP Rachael Seguin and current Eastern IGP Supervisor Anthony Black, along with copies of plaintiff's grievances, in support of their argument that plaintiff

---

[6] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1). If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii). Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

failed to exhaust his administrative remedies prior to commencing this action.  See Black Decl.; Dkt. No. 174-9 ("Seguin Decl."); Dkt. No. 174-14.  Mr. Black declared that a review of the inmate grievance records at Eastern demonstrated that plaintiff filed five grievances while housed at Eastern between December 2014 and February 2015.  Black Decl. ¶ 6.  On December 10, 2014, plaintiff filed grievance ECF-26147-14, alleging that he had received misbehavior reports, was keeplocked, and harassed and retaliated against by staff because of his religious hairstyle.  Id. ¶ 7; see Dkt. No. 174-14 at 31-34.  Plaintiff submitted additional letters of complaint dated December 14, 2014, December 18, 2014, and December 20, 2014 alleging similar types of issues to the original grievance.  Id. ¶ 8; see Dkt. No. 174-14 at 35-44.  Eastern IGP consolidated these letters with grievance ECF-26147-14.  See id.  The Superintendent denied plaintiff's grievance on December 24, 2014, and plaintiff submitted an Appeal Statement and supporting exhibits to CORC.  Id. ¶¶ 9, 10; see Dkt. No. 174-14 at 45-48, 50-51, 52-103.  Within the attached exhibits submitted to CORC, plaintiff included a letter dated December 25, 2014 stating new allegations against defendant Labatte regarding her failure to send plaintiff's legal mail.  Id. ¶ 11; see Dkt. No. 174-14 at 74-75.  Plaintiff's allegations against defendant Labatte were not addressed during the facility-level investigation or considered by the Superintendent.  Id.  CORC decided plaintiff's appeal on April 29, 2015.  Seguin Decl. ¶ 16; see Dkt. No. 174-11 at 1.

In correspondence dated December 25, 2014 and January 18, 2015, plaintiff alleged that he had been denied copies of legal documents and/or interference with mail, and that the IGP was not properly processing his grievances.  Black Decl. ¶ 12; see Dkt. No. 174-14

11

at 8-9.  Plaintiff further submitted letters dated January 23, 2015 and February 24, 2015 alleging that defendant Labatte had falsified documents in connection with the disbursement of plaintiff's funds for legal copies, which resulted in missing court deadlines. Id. ¶ 13; see Dkt. No. 174-14 at 14-15, 21-23.  These letters were consolidated into grievance ECF-26198-15.  See id. ¶ 12; see Dkt. No. 174-14 at 8-9.  On February 4, 2015, the Eastern Inmate Grievance Review Committee ("IGRC") denied plaintiff's grievance, and the next day, plaintiff appealed the IGRC's decision to the Superintendent.  Id. ¶¶ 14, 15; see Dkt. No. 174-14 at 17-18.  On April 9, 2015, the Superintendent denied plaintiff's grievance.  Id. ¶ 16; see Dkt. No. 174-14 at 1.  Plaintiff did not file an appeal with CORC. See Dkt. No. 174-15 at 3.

On January 15, 2016, plaintiff filed grievance ECF-26187-15 alleging that he had been frisked and threatened with a disciplinary ticket if he did not cut his hair; denied food; housed in a cell with no "feed-up slot"; injured himself attempting to retrieve his food tray; intolerable cell conditions.  Black Decl. ¶ 18; see Dkt. No. 174-14 at 130-135.  He also alleged due process violations.  Id.  On February 4, 2015, the Eastern IGRC denied plaintiff's grievance, and plaintiff appealed to the Superintendent.  Id. ¶ 19; see Dkt. No. 174-14 at 112.  On March 19, 2015, the Superintendent denied plaintiff's grievance.  Id. ¶ 20; see Dkt. No. 174-14 at 111.  Plaintiff did not file an appeal with CORC.  See Dkt. No. 174-15 at 3.

On January 26, 2015, plaintiff filed grievance ECF-26197-15 dated January 18, 2015, alleging that he had been issued a misbehavior report because of his hairstyle; staff made false statements against him in a disciplinary hearing; staff subjected him to

harassment, threats, and retaliation; and his hearing officer was biased and racist.  Black Decl. ¶ 22; see Dkt. No. 174-14 at 144-48.  Plaintiff submitted a letter dated January 23, 2015 alleging complaints similar to those set forth in the January 18, 2015 grievance, and that letter was consolidated with grievance ECF-26197-15.  Id. ¶ 23; see Dkt. No. 174-14 at 149-50.  On February 2, 2015, the Eastern IGRC "determined that the issues raised in [the grievance] were outside the purview of the IGRC."  Id. ¶ 24; see Dkt. No. 174-14 at 141.  That same day, plaintiff appealed the IGRC's decision to the Superintendent.  See id.  On March 19, 2015, the Superintendent denied plaintiff's grievance.  Id. ¶ 25; see Dkt. No. 174-14 at 138.  Plaintiff did not file an appeal with CORC.  See Dkt. No. 174-15 at 3.

On February 23, 2015, plaintiff filed grievance ECF-26217-15, dated February 12, 2015, alleging that non-party C.O. Kozak retaliated against him for using the grievance process by filing a misbehavior report; staff moved his cell, harassed him, and sexually harassed him in retaliation for writing grievances; staff sexually touched him during frisks; an officer read his legal mail; his claims were not being investigated.  Black Decl. ¶ 27; see Dkt. No. 174-14 at 171-76.  Plaintiff submitted a letter dated February 24, 2015 that was consolidated with grievance ECF-26217-15 alleging that plaintiff's letter of complaint to the Superintendent regarding sexual abuse was ignored.  Id. ¶ 28; see Dkt. No. 174-14 at 177-78.  On April 21, 2015, the Superintendent denied plaintiff's grievance.  Id. ¶ 29; see Dkt. No. 174-14 at 170.  Plaintiff appealed that determination to CORC on April 24, 2015.  Id. ¶ 30; see Dkt. No. 174-14 at 170.  CORC issued a decision on plaintiff's grievance on July 8, 2015.  Seguin Decl. ¶ 26; see Dkt. No. 174-12 at 41.  Plaintiff commenced this action on April 2, 2015.  Dkt. No. 1.

It is well-settled that "the PLRA requires that an inmate plaintiff must exhaust his available administrative remedies before commencing a lawsuit in federal court with respect to prison conditions." Peoples v. Beldock, 212 F. Supp. 2d 141, 142 (W.D.N.Y. 2002); see McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017) ("The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.") (citation omitted); White v. Drake, No. 10-CV-1034 (GTS/DRH), 2011 WL 4478988, at *3 (N.D.N.Y. Aug. 11, 2011) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate file an appeal with CORC and receive a response from CORC prior to filing a federal lawsuit.") (citation omitted).

As to the grievances ECF-26147-14 and ECF-26217-15, the record is clear that plaintiff filed this action on April 5, 2015, and, at that time, CORC had yet to issue a decision on plaintiff's CORC appeals. See Dkt. No. 1; Seguin Decl. ¶¶ 16, 26; Dkt. No. 174-12 at 41; Dkt. No. 174-11 at 1. Despite plaintiff's assertions to the contrary, plaintiff did not fully exhaust his administrative remedies prior to filing this lawsuit because the CORC decisions were outstanding. Moreover, that plaintiff ultimately received CORC decisions on grievances ECF-26147-14 and ECF-26217-15 on April 29, 2015 and July 8, 2015 respectively, does not cure plaintiff's failure to exhaust. See Lopez v. Cipolini, 136 F. Supp. 3d 570, 582 (S.D.N.Y. 2015) (internal citation and quotation marks omitted) ("A plaintiff must exhaust his administrative remedies before filing his initial complaint in federal court . . . . [S]ubsequent exhaustion after suit is filed . . . is insufficient."). Accordingly, plaintiff did not fully exhaust his administrative remedies as to grievances ECF-26147-14

14

and ECF-26217-15 prior to filing this lawsuit.   See Peoples, 212 F. Supp. 2d at 142; McMillian, 2017 WL 8894737, at *2; White, 2011 WL 4478988, at * 3.   Further, the undersigned notes that insofar as plaintiff attempted to raise new issues for CORC's consideration in the appeal statements for grievances ECF-26147-14 and ECF-26217-15, this is improper and does not constitute exhaustion.   See Fox v. Labatte, No. 9:15-CV-144 (LEK/DJS), 2016 WL 8716662, at *4 (N.D.N.Y. Mar. 11, 2016) ("Furthermore, [p]laintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time, as he did with grievance number ECF 26147-14."); Robinson v. Rome, No. 9:10-CV-0993 (LEK/CFH), 2013 WL 3328222, at 8 (N.D.N.Y. July 2, 2013) ("One appeal raised assault allegations for the first time that were not in the originating grievance. Thus, CORC declined to consider those allegations and advised Robinson to file a separate grievance raising those issues.").

As to plaintiff's remaining grievances, the record confirms Ms. Seguin and Mr. Black's statements that plaintiff never appealed grievances ECF-26198-15, ECF-26217-15, and ECF-26197-15 to CORC.   See Dkt. No. 174-15 at 3; Black Decl. ¶¶ 17, 21, 26; Seguin Decl. ¶ 13; Dkt. No. 174-10 at 2.   Therefore, defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies.


### 2. Availability of Administrative Remedies

Plaintiff proffers a series of arguments suggesting that administrative remedies were unavailable to him.   See generally Pl. Opp.

15

### a. CORC Delay

Plaintiff argues that CORC's delay in rendering a decision on his grievances rendered the process unavailable.  See id. at 6-7.  Courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff's failure to exhaust his administrative remedies. Compare Casey v. Brockley, No. 9:13-CV-01271 (DNH/TWD), 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015), report-recommendation and order adopted by 2015 WL 7864161 (N.D.N.Y., Dec. 03, 2015) ("CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust.") and Ford v. Smith, No. 9:12-CV-1109 (TJM/TWD), 2014 WL 652933, at *3 (N.D.N.Y. Feb. 19, 2014) (concluding that CORC's six month delay in responding to his appeal did not render the grievance process unavailable) with Rossi v. Fischer, No. 13-CV-3167 (PKC)(DF), 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because prison officials failed to respond to plaintiff's grievance within the 30 day time limit set by regulation, administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate.") and Peoples v. Fischer, No. 11 Civ. 2694(SAS), 2012 WL 1575302, *6 (S.D.N.Y. 2012) on reconsideration in part, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination").

The record indicates that approximately four months elapsed between plaintiff's appeal of grievance ECF-26147-14 in December 2014 and when CORC ultimately

rendered their decision in April 2015.  Black Decl.  ¶¶ 9, 10; Dkt. No. 174-14 at 45-48, 50-51;  Seguin Decl. ¶ 16; Dkt. No. 174-11 at 1.  The record further demonstrates that approximately three months elapsed between plaintiff's appeal of grievance ECF-26217-15 in April 2015 and when CORC rendered their decision in July 2015. Black Decl. ¶ 30; Dkt. No. 174-14 at 170; Seguin Decl. ¶ 26; Dkt. No. 174-12 at 41.  Plaintiff does not proffer evidence that he wrote to the Eastern IGRC or CORC inquiring as to the status of his appeals for grievances ECF-26147-14 and ECF-26217-15; in fact, plaintiff argues that "there is no policy that states that" he is required to "write anyone to see if his grievances were forward."  Pl. Opp. at 9.  However, pursuant to N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(d)(3)(i), "[i]f a grievant does not receive a copy of the written notice of receipt within 45 days of filing an appeal [to CORC], the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC."  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(d)(3)(i).  The same language regarding plaintiff's ability to contact the IGP supervisor regarding his appeal status appears in DOCCS Directive 4040, a copy of which plaintiff has provided to the Court.  Further, Mr. Black declared that based on his review of Eastern's records, plaintiff "never contacted Eastern's [IGP supervisor] in writing . . . to confirm that any of his appeals were filed and transmitted to CORC." Black Decl. ¶ 34.  Thus, the undersigned concludes that CORC's approximately four-month delay in ECF-26147-14 and three-month delay in ECF-26217-15 does not excuse plaintiff from the exhaustion requirement.  Cf. Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance

relating to the October 22, 2013 incident, such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA.").

### b. Non-Grievable Issue

Plaintiff contends that an unspecified person told him that "his claims pertaining to the hearing officers were non-grievable pursuant to Directive 4040 701.3(e)(1)[7] as [he] had an appeal mechanism." Pl. Opp. at 8. Thus, based on plaintiff's interpretation of DOCCS' regulations and procedures, inmates are required to raise claims concerning hearing officer biases, related to disciplinary hearings, during the disciplinary process. See id. Plaintiff's argument is misplaced. Courts in this District have held that "[t]hough a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary

---

[7] A list of "non grievable" issues is set forth in Section 701.3(e) and DOCCS' Directive # 4040:

> e) Non-grievable issues.
>
> (1) An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable.
>
> (2) An individual decision or disposition of the temporary release committee, time allowance committee, family reunion program or media review committee is not grievable. Likewise, an individual decision or disposition resulting from a disciplinary proceeding, inmate property claim (of any amount), central monitoring case review or records review (freedom of information request, expunction) is not grievable. In addition, an individual decision or disposition of the Commissioner, or his designee, on a foreign national prisoner application for international transfer is not grievable.
>
> (3) The policies, rules, and procedures of any program or procedure, including those above, are grievable.
>
> Note: If an inmate is unsure whether an issue is grievable, he/she should file a grievance and the question will be decided through the grievance process in accordance with section 701.5 of this Part.

N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3.

18

hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.'" Barker v. Smith, No. 16-CV-76, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (quoting Scott v. Gardner, 287 F. Supp. 2d 477, 489 (S.D.N.Y. 2003), on reconsideration in part, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), and on reconsideration in part, 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005) ); see also Labounty v. Johnson, 253 F. Supp. 2d 496, 501 (W.D.N.Y. 2003) ("An appeal from a disciplinary hearing does not satisfy the grievance exhaustion requirement for a [constitutional] claim, even if the hearing is based on the same set of facts underlying the grievance."). However, "[w]here an inmate claims both that there was official misconduct in the events leading to the disciplinary hearing and that the hearing itself was constitutionally flowed, he must follow both DOCCS procedures." Kimbrough v. Fischer, No. 9:13-CV-0100 (FJS/TWD), 2014 WL 12684106, at *6 (N.D.N.Y. Sept. 29, 2014) (citing Rosales v. Bennett, 297 F. Supp. 2d 637, 639 (W.D.N.Y. 2004)).  An inmate

> cannot satisfy the PLRA's exhaustion requirement as to grievable matters that do not directly relate to the conduct of a hearing simply by alluding to them in his administrative appeal of the hearing decision. For example, if at the hearing the inmate asserts, or attempts to assert, allegations of misconduct by the correction officers involved in the underlying events, the inmate cannot adequately exhaust his remedies for PLRA purposes through his administrative appeal of the hearing decision; he must separately grieve the alleged misconduct of the officers.

Kimbrough, 2014 WL 12684106, at *6 (quoting Rosales, 297 F. Supp. 2d at 639).  Thus, plaintiff's argument that his claims regarding hearing officer bias during his disciplinary hearings constituted non-grievable issues is contrary to well-settled law; plaintiff was required to grieve his claims against the individual hearing officers using the grievance

procedure.

Even if the undersigned were to interpret plaintiff's argument as stating that DOCCS' regulations regarding the proper grievance procedures for his claims against the hearing officers were confusing and irreconcilable, plaintiff's excuse would still lack merit.  The record demonstrates that plaintiff filed a series of letters that the Eastern IGP consolidated into grievance ECF-26197-15, wherein he suggests that his disciplinary hearing officers were biased against him, and thus, not fair and impartial hearing officers.  See Dkt. No. 174014 at 144-48.  That plaintiff filed at least one grievance alleging bias on behalf of the hearing officers at his disciplinary hearings casts doubt as to whether plaintiff could attempt to allege that the process was confusing.

As such, plaintiff's argument regarding non-grievable issues lacks merit.


### c. Other Arguments

Plaintiff offers a series of other arguments in an attempt to establish that the grievance procedure was unavailable.  First, plaintiff states that "[a]ll confinement issues were handled at the facility level pursuant to Directive 4040 701.5(b)(1)."  Pl. Opp. at 8. Directive 701.5(b)(1) concerns the informal resolution of a grievance prior to the commencement of a grievance hearing.  See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1).[8]  Thus, plaintiff seems to suggest that the informal resolution of his conditions

---

[8] Section 701.5(b)(1) and DOCCS Directive 4040 states: "Informal resolution. The representatives of the IGRC shall have up to 16 calendar days after a grievance is filed to resolve it informally. If the matter is resolved to the satisfaction of the grievant, the resolution and the grievant's consent must be entered on the inmate grievance complaint form."  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1).

of confinement claims at the facility level constituted proper exhausted under PLRA.  See Pl. Opp. at 8.  Plaintiff specifies that (1) after complaining that he had to climb-up bars to receive his food in his cell, he was transferred to a cell with a "feed-up slot"; (2) when he complained that holes in his cell window caused him to be "very cold," he was moved to a housing unit with heat; and (3) when he complained he did not have clean clothes and only one set of pants, staff gave him the appropriate amount of clothing and his dirty clothes were washed.  See Dkt. No. 18-2 at 3.  However, plaintiff filed grievance ECF-26187-15 alleging these claims; grievance ECF-26187-15 was denied at both the IGRC level an the Superintendent's level.  See Black Decl. ¶¶ 18, 19; Dkt. No. 174-14 at 112, 130-135.  Plaintiff never appealed that grievance to CORC.  See Dkt. No. 174-15 at 3.

Section 701.5(b)(1) refers to an informal resolution that occurs after plaintiff files his grievance, but *before* the full committee conducts a hearing to either answer the grievance or make a recommendation.  See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b)(1).  Thus, plaintiff's argument that his conditions of confinement claims were handled at the facility-level pursuant to section 701.5(b)(1) is misplaced as it is clear that plaintiff filed a grievance regarding these claims, and appealed the initial denial of that grievance to the Superintendent.  See Black Decl. ¶¶ 18, 19; Dkt. No. 174-14 at 112, 130-135.  There is no indication that the Eastern IGRC administratively closed plaintiff's grievance if he, in fact, received his requested relief.  As section 701.5(b)(1) provides for informal resolution to occur up to sixteen calendar days after a grievance is filed, and because plaintiff's grievances were not informally resolved during that time, but, at the earliest, after the

Superintendent's decision on grievance ECF-26187-15, it cannot be said that plaintiff's grievances were "handled at the facility level pursuant to Directive 4040 701.5(b)(1)."  Pl. Opp. at 8; cf. Pellis v. Hobbs, No. 16 CV 4023 (VB), 2018 WL 3212463, at *5 (S.D.N.Y. June 29, 2018) (denying the defendants' motion for summary judgment where the plaintiff's grievance was informally resolved during the sixteen-day time frame set forth in section 701.5(b)(1)).

The undersigned reaches a similar result as to plaintiff's excessive force claims against C.O. Cruz.  Plaintiff claims that Lt. Simmons told him not to file a grievance against C.O. Cruz because plaintiff would "only make things worse on [him]self"; instead, Lt. Simmons transferred plaintiff to a different housing unit away from C.O. Cruz.  Pl. Opp. at 8-9.  Although these facts, on their face, would suggest that the grievance was informally resolved pursuant to section 701.5(b)(1), plaintiff has failed to provide enough information to defeat defendants' motion.  At first read, it seems as though plaintiff's excessive force claim against C.O. Cruz encompasses the same conduct as his sexual harassment claim,[9] see Dkt. No. 144 at 55-61, and, therefore, was grieved pursuant to grievance ECF-26217-15.  Black Decl. ¶ 27; see Dkt. No. 174-14 at 171-76.  However, plaintiff states that he did not file a grievance against C.O. Cruz for this conduct, see Pl. Opp. at 8-9; thus the undersigned is unsure as to whether the pat frisk that forms plaintiff's excessive force claim is the same incident as his sexual harassment claim.  Even if plaintiff's excessive force

---

[9] Because excessive force is a separate cause of action, plaintiff's claim is not deemed exhausted through the filing of his PREA complaint.  See Allen v. Graham, No. 9:16-CV-47 (GTS/ATB), 2017 WL 9511168, at *7 (N.D.N.Y. Sept. 26, 2017) ("Because DOCCS created this exception solely for sexual abuse and sexual harassment claims, plaintiff's complaint to mental health staff would not exhaust other claims arising from the July 30, 2014 incident, such as an Eighth Amendment excessive force claim."); see also supra, at 23-24.

claim was grieved in grievance ECF-26217-15, the undersigned is unable to determine if this informal resolution occurred within the sixteen-day time frame set forth in section 701.5(b)(1) as plaintiff does not provide dates as to when the conversation with Lt. Simmons occurred.  Thus, plaintiff has failed to demonstrate that his excessive force claim against C.O. Cruz should be excused from the exhaustion requirement.

Second, plaintiff argues that his "sexual harassment issues were handled pursuant to 701.3(i)(1)," and that he "does not have to exhaust any remedies pertaining to sexual harassment claims [because] all [he] had to do was file a complaint pursuant to the PREA Act."  Pl. Opp. at 8.  Plaintiff is correct that "an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy [PLRA] exhaustion requirement . . . before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported."   N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(i)(1).

> For purposes of the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52) and the exhaustion requirement, any allegation concerning an incident of sexual abuse or sexual harassment . . . shall be deemed exhausted if official documentation confirms that:
>
> > (1) an inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of the Inspector General;
>
> or

23

> (2) a third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

Id.  The record indicates that plaintiff filed grievance ECF-26217-15 alleging that C.O. Cruz sexually harassed him during a pat frisk.  See Dkt. No. 174-14 at 173-74.  The undersigned finds that by virtue of plaintiff filing a grievance concerning the alleged sexual harassment, he has "report[ed] the incident to facility staff" pursuant to section 701.3(i)(1).  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.3(i)(1).  Further, defendants have proffered an email from former Eastern IGP Supervisor Thomas Mauro to defendant Russo that, in discussing plaintiff's grievance ECF-26217-15, states, "[t]his complaint was also forwarded to you to be logged in PREA book."  Dkt. No. 174-14 at 159.  Defendants also proffer a memorandum from the director of the IGP to the Office of Special Investigations ("OSI") stating that plaintiff's grievance alleging sexual harassment was being investigated by OSI. See Dkt. No. 174-12 at 50.  Thus, because official documentation exists that plaintiff reported his claims of sexual harassment to Eastern facility staff, the undersigned finds that plaintiff has exhausted his sexual harassment claim against C.O. Cruz.

Next, plaintiff seems to suggest that he was prevented from filing grievances because "DOCCS grievance employees contradict [the] grievance policies by intentionally failing to file and forward plaintiff's grievances in an attempt to prevent plaintiff from filing a success[ful] suit and cause the mishaps that[ are] occur[r]ing now."  Pl. Opp. at 5. "Administrative remedies are not available if prison officials 'interfere[ ] with an inmate's pursuit of relief' by, for example, misinforming an inmate as to the applicability of the grievance process to the inmate's claims."  Kendall v. Cuomo, No.1:12-CV-3438

24

(ALC)(RLE), 2017 WL 4162338, at *3 (S.D.N.Y. Sept. 19, 2017) (citing Ross, 136 S.Ct. at 1860); see also Veloz v. New York, 339 F. Supp. 2d 505, 515-16 (S.D.N.Y. 2004) (noting that "[w]hen an inmate's reasonable attempts to exhaust administrative remedies are impeded by a correctional officer" the remedy is unavailable). The undersigned concludes that there is no evidence in the record that any of the defendants interfered with plaintiff's pursuit of the grievance procedure. In fact, the record clearly establishes that plaintiff was able to access the grievance process as he filed five grievances while housed at Eastern. See Black Decl. ¶ 6. Moreover, plaintiff does not allege what claims defendants allegedly prevented him from filing. Thus, plaintiff's bare assertions that defendants thwarted his attempts to file grievances are insufficient to render the grievance process unavailable.

Finally, plaintiff argues the filing of his amended complaint cured the exhaustion issue as his claims were exhausted at the time his amended complaint was filed. Pl. Opp. at 9-10. Plaintiff's argument lacks merit. It is well-settled that "a post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." Guillory v. Haywood, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing Kasiem v. Switz, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010); see Shepherd v. Lempke, No. 9:10-CV-1524, 2017 WL 1187859, at *3 (N.D.N.Y. Mar. 30, 2017) (citing cases). Thus, plaintiff's filing of an amended complaint does not cure his exhaustion defect.

Accordingly, it is recommended that defendants' motion be denied as to plaintiff's sexual assault claim against C.O. Cruz as plaintiff has demonstrated that he exhausted his administrative remedies with respect to that claim. It is further recommended that

defendants' motion as to all other claims be granted for failure to exhaust.[10]

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 174) be **GRANTED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's First Amendment freedom of expression and free exercise claims against defendants Lee, Russo, Madison, Simmons, Sullivan, Wendland, Webbe, Bey, Vanacore, Waugh, Miller, Williamson, and Cruz for failure to exhaust

(2) Insofar as it seeks dismissal of plaintiff's First Amendment retaliation claims against defendants Simmons, Madison, Cruz, Williamson, Bey, Wendland, Kozak, Waugh, Webbe, Russo, Lee, Miller, Vanacore, Sullivan, Connor, and Barg for failure to exhaust,

(3) Insofar as it seeks dismissal of plaintiff's First Amendment interference with mail claims against defendants Calao, Jennings, and Labatte for failure to exhaust,

(4) Insofar as it seeks dismissal of plaintiff's claim that defendants Webbe,

---

[10] To the extent that the undersigned recommends dismissal of plaintiff's claims, those claims should be dismissed with prejudice as he would be barred by the three-year statute of limitations from reinstating this suit, and "[b]ecause this and any subsequently amended or reinstituted complaint is subject to dismissal for failure to exhaust administrative remedies, it would be futile to grant plaintiff leave to amend or allow him to reinstitute the suit." Baez v. Kahanowicz, 469 F. Supp. 2d 171, 180 (S.D.N.Y. 2007); see Bridgeforth v. Bartlett, 686 F. Supp. 2d 238, 240 (W.D.N.Y. 2010) ("Since the time limits for plaintiff to file an administrative appeal have long since passed, administrative remedies are no longer available to him[.]").

Simmons, and Lee denied him access to magazines for failure to exhaust,

(5) Insofar as it seeks dismissal of plaintiff's Fourth Amendment claims pursuant to a search/strip search and cell search against defendants Connor, Williamson, and Cruz for failure to exhaust,

(6) Insofar as it seeks dismissal of plaintiff's Eighth Amendment conditions of confinement claims against defendants Lee, Webbe, Simmons, Sullivan, and Henry for failure to exhaust,

(7) Insofar as it seeks dismissal of plaintiff's Fourteenth Amendment due process claims against defendants Lee, Webbe, Russo, Simmons, Wendland, and Sullivan for failure to exhaust,

(8) Insofar as it seeks dismissal of plaintiff's supervisory liability claims against defendants Lee and Annucci for failure to exhaust,

the motion be **GRANTED**, and plaintiff's claims be **DISMISSED** with prejudice; and it is further

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 174) be **DENIED IN PART**:

(1) Insofar as it seeks dismissal of plaintiff's Eighth Amendment sexual harassment claims against C.O. Cruz,

the motion be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

27

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[11]

Dated: December 18, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).